VILLELLA, APPELLEE, *v.* WAIKEM MOTORS, INC., APPELLANT.

[Cite as Villella *v.* Waikem Motors, Inc. (1989), 45 Ohio St. 3d 36.]

(No. 88-64—Submitted February 15, 1989—Decided August 16, 1989.)

*Donald C. Steiner,* for appellee.

*Messerman & Messerman Co., L.P.A.,* and *Gerald A. Messerman,* for appellant.

ALICE ROBIE RESNICK, J.

I

In its first proposition of law, the appellant asserts that punitive damages should not have been awarded to appellee, because the evidence produced at trial was insufficient to support a finding of actual malice, which is a prerequisite to punitive damages recovery.

Historically, punitive damages in Ohio have been allowed in civil tort actions which involve ingredients of fraud, malice, or insult. *Roberts* v. *Mason* (1859), 10 Ohio St. 277; *Detling* v. *Chockley* (1982), 70 Ohio St. 2d 134, 136, 24 O.O. 3d 239, 240, 436 N.E. 2d 208, 209. Additionally, in construing the reasoning behind punitive damages, this court has held that " '[t]he principle of permitting [punitive] damages, in certain cases, to go beyond naked compensation, is for example, and the punishment of the guil-

ty party for the wicked, corrupt, and malignant motive and design, which prompted him to the wrongful act.' " *Detling, supra,* at 136, 24 O.O. 3d at 240-241, 436 N.E. 2d at 209-210, citing *Simpson* v. *McCaffrey* (1844), 13 Ohio 508, 522; see, also, *Rayner* v. *Kinney* (1863), 14 Ohio St. 283, 286-287; *Smith* v. *Pittsburgh, Ft. W. & C. Ry. Co.* (1872), 23 Ohio St. 10, 18; *Railroad Co.* v. *Hutchins* (1881), 37 Ohio St. 282, 294.

The conduct necessary to support punitive damages awards has been a major concern of trial courts. In *Preston* v. *Murty* (1987), 32 Ohio St. 3d 334, 512 N.E. 2d 1174, paragraph one of the syllabus, we set forth the elements of malice needed in order to support an award of punitive damages, by noting that the defendant must have operated under "(1) that state of mind * * * which * * * is characterized by hatred, ill will or a spirit of revenge, *or* (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Also, we have noted "that it is rarely possible to prove actual malice otherwise than by conduct and surrounding circumstances." *Davis* v. *Tunison* (1959), 168 Ohio St. 471, 475, 7 O.O. 2d 296, 298, 155 N.E. 2d 904, 907. Moreover, actual malice can be inferred from conduct and surrounding circumstances which may be characterized as reckless, wanton, willful or gross. *Columbus Finance, Inc.* v. *Howard* (1975), 42 Ohio St. 2d 178, 184, 71 O.O. 2d 174, 177, 327 N.E. 2d 654, 658; *Rubeck* v. *Huffman* (1978), 54 Ohio St. 2d 20, 23, 8 O.O. 3d 11, 13, 374 N.E. 2d 411, 413.

In applying the applicable law to the instant case, we do not find substantial evidence adduced at trial which would support a finding by a preponderance of the evidence as to hatred, ill will, or a spirit of revenge

under the first standard announced in *Preston* for determining actual malice. *Preston, supra,* at 335, 512 N.E. 2d at 1175. However, as to the second prong of the *Preston* test we do find that Lou Robb acted with a conscious disregard for the rights and safety of the appellee. We find therefore that there was a preponderance of the evidence[2] submitted from which the jury could conclude that the appellant acted with actual malice. Specifically, the record demonstrates the following reckless behavior on the part of appellant.

George Waikem, Sr. had been in the automobile business since 1946. His son, David C. Waikem, had worked at all his father's dealerships his "whole life" and had been the dealer principal at the Waikem Chrysler Plymouth Dealership for two and one-half years. David Waikem informed Louis Robb, the general manager, that Renee Villella's bill had not been paid. Thus, David Waikem admitted that jointly he and Robb had the idea of, and he, Waikem, was instrumental in, arranging the situation whereby Villella was not to be given his car unless he paid his daughter's bill.

Appellee testified that when he was informed by Robb that Waikem Motors was going to keep his car until he discharged his daughter's obligation, he stated, "I have never heard of this before but what can we do about it?" His testimony continued: "And that then led into a [*sic*] probably one of the most heated traumatic arguments, fights whatever you want to call it that I have ever had in my entire life including all of my business life."

When asked what Robb's general demeanor and attitude towards him were, appellee testified:

"A.  Very hostile, almost threatening.

"Q.  You mean over bearing?

"A.  Almost threatening, more than over bearing.

"Q.  OK.

"A.  I think some names he used like dead beat if I am not mistaken, that we were dead beats and a number of things like that which is a personal [af]front to me. I have a lot of integrity and I didn't like that."

Mrs. Villella, who entered the discussions after waiting about an hour in her car, observed that Robb acted "kind of arrogant"; and that he was "set in the fact that this was what he wanted and he wasn't going to settle for anything else."

In response to a question as to whether Robb changed his posture subsequent to a call to a lawyer after an hour and one-half of discussions, appellee answered, "[n]one whatsoever, he continually badgered me about the $800."

Appellee testified that as he was leaving, following the discussions, he was shaking and he was not feeling well. His wife testified that her husband's "face was flushed and he was shaking and he [*sic*] you could just see that he was agitated."

It was not until appellee walked outside and threatened a lawsuit that

---

[2] The quantum of proof which was required for an award of punitive damages at common law was a "preponderance of the evidence." *Johnson* v. *Stackhouse Oldsmobile, Inc.* (1971), 27 Ohio St. 2d 140, 143, 56 O.O. 2d 78, 79, 271 N.E. 2d 782, 784. In recognizing the nature of punitive damages as well as the potential for their misapplication, the General Assembly recently enacted R.C. 2315.21(C)(3), which raises the quantum of proof required of the plaintiff to "clear and convincing evidence" in all cases where punitive damages are awarded, except where otherwise provided for by statute. (Am. Sub. H.B. No. 1, effective January 5, 1988.)

Robb asked if there was some way that they could negotiate again.

Appellee testified that he was under tremendous pressure to get to a $2,000,000 business negotiation for the selling of his employer's factory the next day, and that he had to have his automobile because he had no other means of transportation to his out-of-town meeting.

He testified that after he finally obtained the release of his car, he and his wife went home. Further, he stated that he "didn't even eat that evening." He had intended to spend two to three hours reading the papers and legal documents relating to the next day's negotiations, but he was so upset he was not able to do so. Moreover, he was able to sleep only for an hour.

Having found there was sufficient evidence from which actual malice could be inferred, we hold it was proper for the jury to assess punitive damages.

## II

In the second proposition of law, the appellant contends that the amount of punitive damages awarded by the jury was unreasonable. He contends that they were the result of passion and prejudice in light of the misconduct of appellee's counsel at trial, the amount of compensatory damages assessed compared with the punitive damages awarded, and the appellant's conduct in relation to the appellee's injuries.

In *Fromson & Davis Co.* v. *Reider* (1934), 127 Ohio St. 564, 189 N.E. 851, paragraph three of the syllabus, we held that "[i]n order to determine whether excessive damages were so influenced [by passion or prejudice], a reviewing court should consider, not only the amount of damages returned and the disparity between the verdict and remittitur where one had been

entered, but it becomes the duty of such court to ascertain whether the record discloses that the excessive damages were induced by * * * misconduct on the part of the court or counsel, or * * * by any other action occurring during the course of the trial which can reasonably be said to have swayed the jury in their determination of the amount of [punitive] damages that should be awarded."

We have maintained that in closing arguments counsel may not "comment on evidence which has been excluded or declared inadmissible by the trial court or otherwise make statements which are intended to get evidence before the jury which counsel was not entitled to have the jury consider." *Drake* v. *Caterpillar Tractor Co.* (1984), 15 Ohio St. 3d 346, 347, 15 OBR 468, 470, 474 N.E. 2d 291, 293.

In the instant case appellant's counsel objected to appellee's counsel's attempts to elicit certain testimony from attorney Randy Snow who apparently represented the appellee's employer, and knew appellee, concerning the content of Snow's telephone conversation with appellant's general manager on the day of the discussions at Waikem Motors. Objections to the substance of the conversation were sustained by the court. The fact that the telephone conversation took place was admitted. Appellee's counsel commented in closing argument as to this conversation, as follows:

"* * * Randy [Snow] talked to Robb, but the defendant objected to your hearing what Randy told Robb, and under technical rules of law, the court had to sustain that objection. So you don't know what Randy told Robb that night." This reference was made only once and it was not objected to by opposing counsel.

"Except where counsel, in his opening statement and closing argu-

ment to the jury, grossly and persistently abuses his privilege, the trial court *is not required to intervene sua sponte* to admonish counsel and take curative action to nullify the prejudicial effect of counsel's conduct. Ordinarily, in order to support a reversal of a judgment on the ground of misconduct of counsel in his opening statement and closing argument to the jury, it is necessary that a proper and timely objection be made to the claimed improper remarks so that the court may take proper action thereon." (Emphasis *sic.*) *Snyder* v. *Stanford* (1968), 15 Ohio St. 2d 31, 44 O.O. 2d 18, 238 N.E. 2d 563, paragraph one of the syllabus. No objection was made to the claimed improper remark. The remark, made only once, cannot be considered a gross and persistent abuse of privilege. Further, the evidence had been admitted that a telephone conversation between Robb and Snow took place. Appellee's counsel did not comment on the substance of the conversation. Thus, the trial court was not required to intervene *sua sponte.* Additionally, any error had been waived since there was no objection by appellant's counsel. See *id.* at 38, 44 O.O. 2d at 22, 238 N.E. 2d at 569.

In reviewing whether the amount of punitive damages awarded was reasonable in relation to the compensatory damages, we note that appellee's actual damages were $250 plus attorney fees. Also, appellant's net worth was calculated to be $568,168. Ultimately, the jury awarded the appellee $150,000 in punitive damages.

We initially note that, generally, the amount of punitive damages to be awarded rests largely within the determination of the trier of fact. *Saberton* v. *Greenwald* (1946), 146 Ohio St. 414, 32 O.O. 454, 66 N.E. 2d 224; *Alessio* v. *Hamilton Auto Body, Inc.* (1985), 21

Ohio App. 3d 247, 21 OBR 264, 486 N.E. 2d 1224; *Gray* v. *General Motors Corp.* (1977), 52 Ohio App. 2d 348, 6 O.O. 3d 396, 370 N.E. 2d 747, paragraph four of the syllabus. Furthermore, the trial judge is in the best position to determine whether an award is so excessive as to be deemed a product of passion or prejudice, *Fromson & Davis Co., supra; Institute of Veterinary Pathology, Inc.* v. *California Health Laboratories, Inc.* (1981), 116 Cal. App. 3d 111, 172 Cal. Rptr. 74; 22 American Jurisprudence 2d (1988) 1082, Damages, Section 1032, or to require remittitur, *Larrissey* v. *Norwalk Truck Lines, Inc.* (1951), 155 Ohio St. 207, 219, 44 O.O. 238, 243, 98 N.E. 2d 419, 426; *Lance* v. *Leohr* (1983), 9 Ohio App. 3d 297, 298, 9 OBR 544, 459 N.E. 2d 1315. As stated in *Goodyear Tire & Rubber Co.* v. *Marhofer* (1930), 38 Ohio App. 143, 176 N.E. 120, paragraph eleven of the syllabus, an "[a]ppellate court hesitates to enter *remittitur* or set aside [a] jury's verdict, supported by creditable proof, as excessive, in [the] absence of passion or prejudice evidenced by [the] record." See, generally, 22 American Jurisprudence 2d (1988) 1067-1070, Damages, Sections 1021-1022.

Low compensatory damages and high punitive damages assessed by a jury are not in and of themselves cause to reverse the judgment or to grant a remittitur, since it is the function of the jury to assess the damages and, generally, it is not for a trial or appellate court to substitute its judgment for that of the trier of fact. A large disparity, standing alone, is insufficient to justify a court's interference with the province of the jury. *Fromson & Davis Co., supra.* See, *e.g., Grybauskas* v. *Associated Estates Corp.* (1976), 51 Ohio App. 2d 231, 5 O.O. 3d 363, 367 N.E. 2d 881 (compensatory damages of $47.95 and punitive damages of $20,000 allowed to stand

where defendants attempted to collect money on a claim which they knew was invalid arising from an alleged breach of contract); *Alessio, supra* (defendant Hamilton Auto Body assessed $33,000 compensatory damages, defendant Robert Hamilton assessed $1 compensatory damages and $30,000 punitive damages; punitive damages held not an abuse of the jury's discretion).

As for appellant's conduct in relation to the appellee's injuries, there was substantial evidence to support the punitive damages award in light of appellant's behavior which exhibited a total disregard for the law and the rights of appellee.

We, therefore, conclude that under the facts before us the jury's award of punitive damages was not excessive.

### III

The appellant contends that the award of attorney fees was rendered in the absence of any evidence submitted to the jury on the reasonableness of such fees. Specifically, the jury was not provided with the amount of time appellee's counsel spent addressing his client's case. Also, the jury was not told what appellee's counsel ordinarily receives for his services, or what attorneys similarly situated receive for their services. Rather, the appellant notes that the jury was left to guess what appellee's attorney fees should have reasonably been.

In directing our focus on attorney fees, we are aware that Ohio law has provided that " '[i]f punitive damages are proper, the aggrieved party may also recover reasonable attorney fees.' " *Hutchinson* v. *J.C. Penney Cas. Ins. Co.* (1985), 17 Ohio St. 3d 195, 200, 17 OBR 432, 436, 478 N.E. 2d 1000, 1004, citing *Columbus Finance, Inc., supra,* at 183, 71 O.O. 2d at 177, 327 N.E. 2d at 658; see, also, *Locafrance United States Corp.* v. *In-*

*terstate Dist. Serv., Inc.* (1983), 6 Ohio St. 3d 198, 202, 6 OBR 252, 256, 451 N.E. 2d 1222, 1226. The factors to consider when awarding attorney fees are " '* * * (1) the time and labor involved in maintaining * * * [the] litigation, (2) the novelty, complexity, and difficulty of the questions involved, (3) the professional skill required to perform the necessary legal services, (4) the experience, reputation, and ability of the attorneys, and (5) the miscellaneous expenses of * * * [the] litigation.' " *Hutchinson, supra,* at 200, 17 OBR at 437, 478 N.E. 2d at 1005, citing *State, ex rel. Montrie Nursing Home, Inc.,* v. *Creasy* (1983), 5 Ohio St. 3d 124, 128, 5 OBR 258, 262, 449 N.E. 2d 763, 767. Additional factors to consider are "[t]he fee customarily charged in the locality for similar legal services" and "[t]he amount involved and the results obtained." DR 2-106(B), Code of Professional Responsibility. Also, there must be evidence presented at trial concerning the proper measure of attorney fees in order to allow an award. *Hutchinson, supra.*

In the case *sub judice,* there is no substantive evidence contained in the trial record concerning the value of appellee's attorney fees in accordance with the *Hutchinson* rationale. The jury was left to speculate what reasonable attorney fees should be. Consequently, the award cannot stand without some evidentiary support pursuant to *Hutchinson.* We therefore must reverse the award of attorney fees and remand for a redetermination of such fees.

### IV

In turning our attention to the propriety of prejudgment interest in the current case, we are led to R.C. 1343.03(C), which provides in pertinent part that:

"Interest on a judgment * * * [or]

decree * * * for the payment of money rendered in a civil action based on tortious conduct * * * shall be computed from the date the cause of action accrued to the date on which the money is paid, if * * * the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."

This court has held that a party does not fail to make a good faith effort to settle, pursuant to R.C. 1343.03(C), when he or she has "(1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party." *Kalain* v. *Smith* (1986), 25 Ohio St. 3d 157, 159, 25 OBR 201, 203, 495 N.E. 2d 572, 574. If a party holds an objectively reasonable belief that he has no liability, "he need not make a monetary settlement offer." *Id.* Furthermore, a lack of good faith means more than poor judgment or negligence; rather, it imports a dishonest purpose, conscious wrongdoing or ill will in the nature of fraud. *Ware* v. *Richey* (1983), 14 Ohio App. 3d 3, 9, 14 OBR 6, 12, 469 N.E. 2d 899, 905.

Additionally, in *Bailey* v. *Container Corp. of America* (S.D. Ohio 1986), 660 F. Supp. 1048, 1056, the federal district court, construing R.C. 1343.03(C), reasoned that where an award of punitive damages is " 'over and above the amount adequate to compensate' " the plaintiff, there is no need to award prejudgment interest on the punitive damages in order to compensate the plaintiff for the delay in payment.

Similarly, it has been stated: "Awarding prejudgment interest *on* punitive damages * * * [would serve] neither the compensatory purposes of prejudgment interest nor the exemplary purposes of punitive damages. Prejudgment interest is purely compensation for the plaintiff's lost use of funds after its cause of action accrues and before its recovery; under R.C. § 1343.03(C), that compensatory payment of prejudgment interest is due only when the defendant, through its lack of good faith effort to settle the case, is partially responsible for the delay in plaintiff's recovery of the compensatory damages. But because an award of punitive damages is 'over and above the amount adequate to compensate' the plaintiff, *Ranells* [v. *Cleveland* (1975), 41 Ohio St. 2d 1, 7, 70 O.O. 2d 1, 4, 321 N.E. 2d 885, 889], *supra,* there is no need to award prejudgment interest on the punitive damages in order to compensate the plaintiff further for a delay in payment." (Emphasis *sic.*) *Presrite Corp.* v. *United Steelworkers of America* (June 6, 1985), Cuyahoga App. No. 48113, unreported, at 45.

Consequently, because punitive damages over and above the amount adequate to compensate the plaintiff were awarded, prejudgment interest to compensate for delay in payment was unnecessary and the award of prejudgment interest must be vacated.

Accordingly, for the reasons set forth in this opinion, we affirm the court of appeals as to the verdict of $250 for compensatory damages and $150,000 for punitive damages but we reverse the judgment of the court of appeals and remand the cause to the trial court for a determination of attorney fees. Lastly, the judgment of the court as to the award of prejudgment interest is reversed and the award is hereby vacated.

*Judgment affirmed in part,
reversed in part
and cause remanded.*

SWEENEY, DOUGLAS and H. BROWN, JJ., concur.

MOYER, C.J., and WRIGHT, J., concur in part and dissent in part.

HOLMES, J., dissents in part and concurs in part.

H. BROWN, J., concurring. I believe that our opinion herein correctly analyzes the law and comes to the conclusion which logically results from that analysis. The punitive damages verdict was lawful. The verdict does not exceed the restrictions on punitive awards established by the ruling case law. The verdict was rendered by the jury after a fundamentally fair trial, untainted by prejudicial error. Surprisingly, no request for remittitur was made. Hence the trial judge did not exercise his discretion in that regard. The verdict was unanimously affirmed by the court of appeals.

Having acknowledged the foregoing, I confess that the punitive damages award of the jury in this case seems high. This subjective judgment does not permit me, as an appellate judge, to set aside the jury determination. Further, it is difficult to make such judgments on the basis of a cold record. Still, the verdict is high. It is high enough that I am prompted to address a problem that I believe to be endemic. The problem is that juries are given little or no guidance with respect to the measure of punitive damages. The consequence is that the amount awarded by a jury for punitive damages is unpredictable. It can be very high or nominal. In either event, appellate courts do not tamper with the result unless the verdict (1) reflects passion and prejudice or (2) is the result of legal error.

A solution to this problem may lie in giving jurors more guidance. The American College of Trial Lawyers has proposed model instructions on punitive damages. In my opinion these proposed instructions have merit. The model jury instructions include the following:

"If you find that punitive damages are to be awarded against the defendant, you must then determine the amount to be awarded. In doing so, you must find the amount that you are persuaded by clear and convincing evidence is fair and reasonable under the circumstances. In making that finding, you may take into consideration one or more of the following factors to the extent you find them relevent [*sic*]:

"(1) the nature of defendant's conduct;

"(2) the impact of defendant's conduct on the plaintiff;

"(3) the relationship between the plaintiff and defendant;

"(4) the likelihood that the defendant would repeat the conduct if a punitive award is not made;

"(5) the defendant's financial condition; and

"(6) any other circumstances shown by the evidence, including any circumstances of mitigation, that bear on the question of the size of any punitive award.

"The purpose of punitive damages is to punish and deter, not to vanquish or annihilate the defendant. Although there is no fixed mathematical formula for you to use in determining the amount of a punitive award, you should strive to set the amount of any award at a level that you determine imposes a fair and reasonable punishment for the amount and type of injury that you find that the defendant has caused the plaintiff. * * *" American College of Trial Lawyers, Report on Punitive Damages of the Committee

on Special Problems in the Administration of Justice (March 3, 1989), at 28.

In any event, I believe that the responsibility rests upon counsel to request instructions on punitive damages which conform to the law and which offer guidance to the jury. Otherwise jurors are left with an almost unbridled discretion. When that discretion results in a lawful verdict that seems high, it is not within the province of an appellate court to substitute its view for that of the jury.

HOLMES, J., dissenting in part and concurring in part. I concur in the court's decision with respect to parts III and IV of the opinion. Specifically, I believe the jury was left to speculate about what the proper attorney fees should have been, since there was no evidence submitted on this issue in accordance with the criteria set forth in *Hutchinson* v. *J. C. Penney Cas. Ins. Co.* (1985), 17 Ohio St. 3d 195, 200, 17 OBR 432, 437, 478 N.E. 2d 1000, 1005. Also, I concur with the court's decision to vacate the prejudgment interest awarded to the appellee. Additionally, I would vacate the award of prejudgment interest on the basis that there was no evidence in the record to indicate a lack of cooperation in the settlement negotiations, or unfair delay tactics by the appellant to justify the award. See *Kalain* v. *Smith* (1986), 25 Ohio St. 3d 157, 159-160, 25 OBR 201, 203, 495 N.E. 2d 572, 574; *Ware* v. *Richey* (1983), 14 Ohio App. 3d 3, 9, 14 OBR 6, 12, 469 N.E. 2d 899, 905-906.

Under the new quantum of proof of "clear and convincing evidence," in order to establish malice for purposes of allowing punitive damages pursuant to recently enacted R.C. 2315.21(C)(3), it would have been appropriate for the trial court to direct a verdict for the defendant. However, this matter was tried under the former standard of proof of "preponderance of the evidence," and under such a standard the evidence could reasonably support a determination that Lou Robb acted with a conscious disregard for the rights and safety of the appellee while acting in his capacity as a representative for the appellant.

However, I find that, under the facts as presented, the jury's award for punitive damages was the result of passion and prejudice, and excessive in light of the appellant's conduct toward the appellee and the appellant's net worth. Specifically, as noted in the majority opinion, regarding the issue of passion and prejudice, there were frequent objections made by appellant's counsel to the line of questioning and arguments made by appellee's counsel. Originally, appellee's counsel sought to elicit certain testimony from an attorney, Randy Snow, who apparently represented the appellee and was involved in a conversation with appellant's general manager on the day of the conversion. Immediately after an objection to a question concerning the conversation, appellee's counsel stated:

"MR. STEINER: But you definitely had a conversation with the representative of Waikem Motors over the phone?

"A. Yes.

"Q. At the request of Mr. Vilella [*sic*]?

"A. Yes.

"Q. OK. And it is my understanding because of the defendant's objections we can go no further with this.

"THE COURT: Well it is as a result of the Court's ruling."

Again, appellee's counsel attempted to allude to the conversation by asking:

"MR. STEINER: Mr. Snow, you, Mr. Baker [appellant's counsel] brought out the fact that you told the

Waikem representative over the phone what the law was[,] now I am going to ask you what you told him.

"MR. BAKER: I object.

"THE COURT: Sustained."

Later in closing argument, appellee's counsel referred to the inadmissible evidence by commenting:

"* * * Randy [Snow] talked to Robb, but the defendant objected to your hearing what Randy told Robb, and under technical rules of law, the court had to sustain that objection. So you don't know what Randy told Robb that night."

Additionally, in closing argument appellee's counsel made the following analogy, which, if not calculated to arouse prejudice on the part of the jury, certainly seemed to have accomplished such result:

"Let's assume that Mr. X has an income of $11,650.00 a year, gross income, before living expenses and taxes. Now, I picked that odd numbered figure deliberately because that is one-one thousandth of the income that Waikem Motors had during 1986. Their gross income was $11,653,000.00. I think you'd agree that Mr. X he did that to his neighbor [took his power mower], ought to be punished. And I think with that kind of income a fair and proper amount would be $250.00. That would have some sting from Mr. X who's earning that kind of money.

"Ladies and gentlemen, to assess an equally stinging amount against Waikem Motors you would have to assess $250,000.00."

Although there was no objection on the record to the above comment, the trial court could have, *sua sponte,* admonished counsel and taken curative action to nullify the prejudicial effect of counsel's conduct. See, *e.g., Jones* v. *Macedonia-Northfield Banking Co.* (1937), 132 Ohio St. 341, 8 O.O. 108, 7 N.E. 2d 544 (grounds for new trial where counsel insinuated unfounded charges concerning opposing counsel thereby causing the jury to award damages based on passion or prejudice). Cf. *Snyder* v. *Stanford* (1968), 15 Ohio St. 2d 31, 44 O.O. 2d 18, 238 N.E. 2d 563.

I believe that the jury was swayed by the misconduct, evidenced above, on the part of appellee's counsel, to the point where damages were awarded on the basis of passion and prejudice, instead of reason. As this court noted in *Drake* v. *Caterpillar Tractor Co.* (1985), 15 Ohio St. 3d 346, 347, 15 OBR 468, 470, 474 N.E. 2d 291, 293, counsel may not "comment on evidence which has been excluded or declared inadmissible by the trial court or otherwise make statements which are intended to get evidence before the jury which counsel was not entitled to have the jury consider." Additionally, this court in *Fromson & Davis Co.* v. *Reider* (1934), 127 Ohio St. 564, 189 N.E. 851, paragraph three of the syllabus, established certain guidelines to follow in awarding punitive damages, where passion and prejudice on the jury's part may have been present. Essentially, "[i]n order to determine whether excessive damages were so influenced, a reviewing court should consider, not only the amount of damages returned and the disparity between the verdict and remittitur where one has been entered, but it becomes the duty of such court to ascertain whether the record discloses that the excessive damages were induced by * * * misconduct on the part of the court or counsel, or * * * by any other action occurring during the course of the trial which can reasonably be said to have swayed the jury in their determination of the amount of [punitive] damages that should be awarded." *Id.*

Therefore, I believe this case

should have been reversed by the court of appeals due to the obvious misconduct by the appellee's counsel, and the passion and prejudice such conduct caused.

Additionally, in focusing on the conduct exhibited by the appellant's general manager toward the appellee, it is difficult for me to discern the level of *egregious* conduct which warranted the size of the award for punitive damages assessed by the jury. The record indicates that, at most, the conversion of the appellee's car lasted for only two hours. Also, the appellee's wife was present with her car while the negotiations for the appellee's car took place, and appellee could have departed the dealership without incident and pursued his legal remedies at a later time. Finally, appellant's general manager was acting under what he believed to be color of the law given the affirmative representations made by the appellee concerning the payment for repairs to his daughter's car. Clearly, the conduct of the appellant's representative did not warrant the exorbitant award for punitive damages dispensed by the jury. See, generally, for a discussion on conduct related to punitive damages, Prosser & Keeton on Torts (5 Ed. 1984) 9-10, Section 2; McCormick, Handbook of the Law of Damages (1935) 280-281, Section 79.

In reviewing whether the punitive damages awarded were at all reasonable, the record shows that appellee's actual damages were only $250, and appellant's net worth only $568,168. But the jury awarded appellee $150,000, or 26.4 percent of the appellant's net worth, in punitive damages. Clearly, in considering the wealth of the appellant along with the actual damages assessed, it is evident that the jury became carried away with its desire to punish this automobile dealership.

Since I believe the jury's award of punitive damages was the result of passion and prejudice and excessive, I would reverse the award of punitive damages and remand for a redetermination of such damages.

A great deal of critical attention has been given nationally to the misuse of punitive damages. The unfettered discretion of juries in making such awards has been the topic of many law review articles and seminar discussions, and has found its way into the Supreme Court of the United States in the case of *Browning-Ferris Industries, Inc.* v. *Kelco Disposal, Inc.* (June 26, 1989), ___ U.S. ___, ___ L. Ed. 2d ___, ___ S.Ct. ___, 57 U.S.L.W. 4985. The Supreme Court in *Browning-Ferris, supra,* rejected an Eighth Amendment argument (Excessive Fines Clause) under the United States Constitution, but specifically left open a future appeal based upon due process grounds.

The Ohio General Assembly has adopted what I believe to be a reasonable approach to the issue of punitive damage awards by promulgating R.C. 2315.21 which provides that in order to warrant the imposition of punitive or exemplary damages:

"(B) * * *

"(1) The actions or omissions of that defendant [must] demonstrate malice, aggravated or egregious fraud, oppression, or insult, or that defendant as principal or master authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate;

"(2) The plaintiff in question has adduced proof of actual damages that resulted from actions or omissions as described in division (B)(1) of this section."

Also, the General Assembly promulgated a more rigorous standard to be followed in punitive or exemplary tort

actions by providing that the burden of proof upon the plaintiff be by "clear and convincing evidence" rather than by a preponderance of the evidence. R.C. 2315.21(C)(3).

In addressing the role of the judge and jury in these cases the General Assembly resolved that:

"In a tort action, whether the trier of fact is a jury or the court, if the trier of fact determines that any defendant is liable for punitive or exemplary damages, the amount of *those damages shall be determined by the court.*" (Emphasis added.) R.C. 2315.21(C)(2). In essence, under R.C. 2315.21, the jury may determine the liability of any defendant, but the court decides the amount of punitive damages to be awarded.

Although the General Assembly did not formulate criteria to be followed in awarding punitive damages in tort actions, it did promulgate criteria that must be followed in calculating punitive damages for product-liability claims.[3]

In like manner, I would suggest that, in future cases where punitive damages are at issue in tort actions, the trier of fact, after necessarily awarding compensatory damages to the plaintiff, take the following factors under consideration in arriving at a just award for the plaintiff to the extent they are found to be relevant:

1. The nature of defendant's conduct[4]; the presence or absence of actual malice or evil motive[5]; and the degree of the defendant's awareness of the likelihood that harm would arise from his or her actions.[6]

2. Prior or similar acts by the defendant; the duration of the misconduct, and any concealment of it by the defendant[7]; and the profitability of the misconduct to the defendant.[8]

3. The attitude and conduct of the defendant upon the discovery of the misconduct and whether the defendant attempted to mitigate the harm incurred by the plaintiff.[9]

4. The deterrent effect of punitive damages on the defendant and others; the likelihood that the defendant would repeat the conduct if a punitive damage award is not made[10]; and the total effect of other punish-

---

[3] See R.C. 2307.80(B)(1)-(7).

[4] See *Walker* v. *Signal Cos.* (1978), 84 Cal. App. 3d 982, 149 Cal. Rptr. 119; *Lynn* v. *Taylor* (1982), 7 Kan. App. 2d 369, 642 P. 2d 131; *Professional Seminar Consultants* v. *Sino American Technology Exch. Council* (C.A. 9, 1984), 727 F. 2d 1470; American College of Trial Lawyers Report on Punitive Damages of the Committee on Special Problems in the Administration of Justice (March 3, 1989) 28-29 ("ACTL"); Sales & Cole, Punitive Damages: A Relic That Has Outlived its Origins (1984), 37 Vand. L. Rev. 1117, 1146.

[5] See *Preston* v. *Murty* (1987), 32 Ohio St. 3d 334, 512 N.E. 2d 1174, syllabus.

[6] See, *e.g.,* R.C. 2307.80(B)(1) and (2); Minn. Stat. 549.20(3) (1986); Mallor & Roberts, Punitive Damages: Toward a Prin-

cipled Approach (1980), 31 Hastings L. J. 639, 667; Owen, Punitive Damages in Product Liability Litigation (1976), 74 Mich. L. Rev. 1257, 1314-1319 ("Owen"); see, generally, Darling, Ohio Civil Justice Reform Act (1987) 84-91, 245-246.

[7] See, *e.g.,* R.C. 2307.80(B)(4); Minn. Stat. 549.20(3).

[8] See, *e.g.,* R.C. 2307.80(B)(3); Minn. Stat. 549.20(3); see, generally, Punitive Damages: Toward a Principled Approach, *supra,* at 667-668; Owen, *supra,* at 1316; ACTL, *supra.*

[9] See *Leimgruber* v. *Claridge Assoc.* (1977), 73 N.J. 450, 456-461, 375 A. 2d 652, 655-658; see, *e.g.,* R.C. 2307.80(B)(5); Minn. Stat. 549.20(3).

[10] See ACTL, *supra.*

ment imposed or likely to be imposed upon the defendant as a result of the misconduct.[11]

5. The economic condition of the defendant by way of net worth and a consideration of the defendant's average net income over the last few operating years[12]; the award of punitive damages may penalize, but should not bankrupt the defendant.[13]

6. There should be some reasonable relationship between the amount of punitive damages awarded compared with the compensatory damages awarded.[14]

I would also add that a distinction must be maintained between those types of awards which are imposed solely to punish and those which are calculated to deter. Finally, punitive damages should be limited to those egregious situations which clearly call for punishment and deterrence beyond that which is inherent in compensatory awards.

Therefore, for the above reasons, I would reverse the judgment of the court of appeals and remand for a new trial for the issue of damages and have the jury consider the factors indicated above, as well as any other pertinent evidence it would need in order to make its determination.

MOYER, C.J., and WRIGHT, J., concur in the foregoing opinion.

WRIGHT, J., concurring in part and dissenting in part. I simply cannot countenance the excessive award of

---

[11] See R.C. 2307.80(B)(7); Minn. Stat. 549.20(3).

[12] See *Neal* v. *Farmers Ins. Exch.* (1978), 21 Cal. 3d 910, 148 Cal. Rptr. 389, 582 P. 2d 980; *Wynn Oil Co.* v. *Purolator Chemical Corp.* (M.D. Fla. 1974), 403 F. Supp. 226; *Citizens Bank of Univ. City* v. *Gehl* (Mo. App. 1978), 567 S.W. 2d 423; see, e.g., R.C. 2307.80(B)(6); Minn. Stat. 549.20 (3).

[13] See *Wynn Oil Co.* v. *Purolator Chemical Corp., supra;* see, generally, Annotation, Excessiveness or Inadequacy of Punitive Damages in Cases not Involving Personal Injury or Death (1985), 35 A.L.R. 4th 538, 554-556; ACTL, *supra.*

[14] *Clary Ins. Agency* v. *Doyle* (Alaska 1980), 620 P. 2d 194; *Miller* v. *Carnation Co.* (1977), 39 Colo. App. 1, 564 P. 2d 127; *Mailloux* v. *Bradley* (Colo. App. 1982), 643 P. 2d 797; *Cruz* v. *Montoya* (Utah 1983), 660 P. 2d 723.

A reasonable-relation concept may not be applicable in certain situations, " '[i]f the overriding consideration in an award of punitive damages is whether it bears a reasonable relation to the actual damages suf-fered the result may be to thwart completely the purpose of punitive damages. One example of this is the situation where a plaintiff has suffered only minor injury or is only able to prove a small amount of actual damages, yet the conduct of the defendant has been especially wanton or malicious. This would seem the precise situation in which a large award of punitive damages would be necessary to ensure that the defendant does not repeat his act and that others do not imitate him. Application of the reasonable relation rule, however, would limit the punitive damages to an amount not disproportionate to the actual damages suffered. This example illustrates the fact that in its operation the reasonable relation rule can ignore the punitive and deterrent functions of exemplary damages.' " *Moore* v. *American United Life Ins. Co.* (1984), 150 Cal. App. 3d 610, 636-637, 197 Cal. Rptr. 878, 895.

See, also, Comment, Punitive Damages and the Reasonable Relation Rule: A Study in Frustration of Purpose (1978), 9 Pac. L.J. 823, 839-840. But note that I have set forth several criteria to be reviewed in awarding punitive damages and a "reasonable relation" is only one factor among many that *may* be taken into consideration.

punitive damages in this matter. This case reflects a trend toward sky-rocketing punitive damages awards which can only tend to bring the judicial process rightful criticism.

It is firmly established that "[e]vidence of actual malice * * * must be present before a jury question of punitive damages is raised * * *." *Detling* v. *Chockley* (1982), 70 Ohio St. 2d 134, 137-138, 24 O.O. 3d 239, 241, 436 N.E. 2d 208, 210. In *Preston* v. *Murty* (1987), 32 Ohio St. 3d 334, 512 N.E. 2d 1174, syllabus, this court defined "actual malice" as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, *or* (2) a conscious disregard for the rights and safety of other persons that has a *great probability of causing substantial harm.*" (Emphasis added in part.) I agree with the majority that the record contains no evidence on which to find hatred, ill will, or a spirit of revenge. The complaint was amended at trial to delete the allegation of emotional distress to appellee. However, I must disagree with the majority's application of the second prong of the *Preston* test, which conspicuously leaves out the requirement of "a great probability of causing substantial harm." While the testimonial evidence arguably would support a finding that Robb acted in "conscious disregard for the rights" of appellee, there is nothing to suggest that substantial harm was "a great probability." Thus, I believe the question of actual malice, and consequently the question of punitive damages, should never have been submitted to the jury. I will concede, however, that this issue may well be within the sound discretion of the trial court.

Of greater concern is the majority's willingness to confer upon a jury unbridled discretion in setting the amount of a punitive damages award.

The majority generally discusses punitive damages awards and appellate review thereof and then leaps to the conclusion that the award in this case "was not excessive." No mention is made of the factors on which a punitive damages amount should be determined or whether these factors would justify the exorbitant award granted in this case.

As stated in *Gray* v. *General Motors Corp.* (1977), 52 Ohio App. 2d 348, 359, 6 O.O. 3d 396, 402, 370 N.E. 2d 747, 754-755, "[w]hile no rigid mathematical formula can be applied, awards of exemplary damages must not be so disproportionate to actual damages sustained as to indicate that they are the result of passion and prejudice rather than reason [on] the part of the jury. * * * They must bear some reasonable relation or proportion to actual damages, that is, the nature and extent of the wrong done the plaintiff." (Citations omitted.) See, also, *Alessio* v. *Hamilton Auto Body, Inc.* (1985), 21 Ohio App. 3d 247, 248, 21 OBR 264, 486 N.E. 2d 1224, 1225 (recognizing that "punitive damages should bear a reasonable relationship to the injury sustained"). Here the punitive damages award was exactly six hundred times the amount of actual damages. This fact standing alone may well be sufficient to void the award as excessive and/or motivated by passion and prejudice. However, under the circumstances of this case, where the defendant's conduct consisted of wrongfully withholding the car for only two hours, the award must be vacated out of hand. If a lawyer or doctor had recklessly or maliciously withheld a client's file for a like time with a minimum of consequential damages, would we uphold such a penalty? I think not.

Furthermore, punitive damages awards have been universally held to

be punishment in the form of a fine levied against the offender. As stated in *Detling, supra,* "[t]he rationale for allowing punitive damages has been recognized in Ohio as that of punishing the offending party and setting him up as an example to others that they might be deterred from similar conduct * * *." *Id.* at 136, 24 O.O. 3d at 240, 436 N.E. 2d at 209. Accordingly, the amount of the award should be neither more nor less than is sufficient to achieve that purpose. The record reveals appellant's net worth at the end of 1986 was $568,168, and its *pretax* profits for that year were approximately $200,000. The $150,000 punitive damages award thus amounts to *seventy-five percent of appellant's pre-tax profits* and *over twenty-five percent of its net worth.* Not only is this far more than sufficient punishment or fine, but it appears to seriously threaten appellant's fiscal integrity.[15] In my view, today's holding violates Waikem's right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution.[16]

I agree with the majority with regard to the attorney fees and prejudgment interest. I agree with Justice Brown and Justice Holmes that we simply must not continue to let juries ponder punitive damages without proper guidelines. We should take action in this case and adopt substantially the same standards suggested by my colleague Justice Holmes. For the reasons stated above, I would vacate the punitive damages award, or at least remand the issue of punitive damages to the trial court for redetermination.

MOYER, C.J., concurs in the foregoing opinion.

---

[15] See *Smith* v. *Telophase Natl. Cremation Society, Inc.* (Fla. App. 1985), 471 So. 2d 163, 170 (holding that "[i]t is error for a punitive damage award to be in an amount which will result in economic castigation or bankruptcy of the defendant"). See, also, *Maxwell* v. *Aetna Life Ins. Co.* (App. 1984), 143 Ariz. 205, 219, 693 P. 2d 348, 362.

[16] The United States Supreme Court, while seemingly agreeing that punitive damages were in reality "fines," recently rejected the notion that excessive punitive damages come within the protection of the Eighth Amendment to the United States Constitution. The due process argument was set over for another day. See *Browning-Ferris Industries* v. *Kelco Disposal, Inc.* (June 26, 1989), ____ U.S. ____, ____ L. Ed. 2d ____, ____ S. Ct. ____, 57 U.S.L.W. 4985.