64 F.3d 662
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
AMERICAN INDOOR SOCCER ASSOCIATION, INC., Plaintiff-Appellee,
v.
CAPITAL DISTRICT SPORTS AND ENTERTAINMENT, INC.; Joseph J.
O'Hara, Defendants-Appellants.
George KELESHIAN, et al., Defendants,
v.
CAPITALAND UNITED SOCCER CLUB, INC., Cross-Claimant
Defendant-Appellee.
 No. 93-4346.
 United States Court of Appeals, Sixth Circuit.
 Aug. 22, 1995.
 
 Before: BROWN, BOGGS, and NORRIS, Circuit Judges.
 OPINION
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 This diversity action stems from the financial woes of the New York Kick, the Albany franchise of the National Professional Soccer League ("NPSL"). Plaintiff American Indoor Soccer Association, Inc. ("the League"), which does business as NPSL, filed suit against the Kick's current and former owners when no team was fielded for the 1991-1992 season. A subsequent jury trial resulted in the award of both compensatory and punitive damages, as well as attorneys' fees, against the Kick's current owners.
 
 I.
 
 2
 Defendant Capitaland United Soccer Club, Inc. ("Capitaland") entered into an agreement with the League in September 1990 to operate a team in Albany. Among other things, Capitaland agreed to abide by the League's by-laws and to post letters of credit in the amount of $100,000. Under the terms of the by-laws, these letters of credit would be forfeited should Capitaland fail to field a team.
 
 
 3
 The team quickly developed financial problems. In January 1991, defendant Joseph O'Hara, who owned defendant Capital District Sports & Entertainment, Inc. ("CDSE"), agreed to purchase the Kick's assets from Capitaland. Under the terms of the agreement, CDSE promised to assume the team's existing debts, pay Capitaland $50,000 at closing plus another $50,000 by November 30, 1991, and deliver a $100,000 letter of credit to the League by June 1, 1991, which would replace the letters of credit posted by Capitaland.[1]
 
 
 4
 The team completed the 1990-1991 season. Shortly after buying the Kick, however, O'Hara accused Capitaland of having made material misrepresentations prior to the sale. Specifically, he charged that Capitaland had misrepresented its franchise fee and the value of the team's property. On May 2, 1991, O'Hara demanded that Capitaland reimburse him for additional expenditures attributable to these misrepresentations.
 
 
 5
 On July 9, O'Hara wrote to League Commissioner Steve Paxos and described his dispute with the Kick's former owners. Noting that litigation was in the offing, O'Hara and CDSE expressed interest in assuming "inactive" status for the next season but were uncertain whether the League's by-laws permitted such a step.
 
 
 6
 The League determined that "inactive status" did not exist. In the meantime, Capitaland sued CDSE, alleging that it was still owed $50,000 under their purchase agreement and that the promised substitute letters of credit from CDSE had not been forthcoming. According to CDSE, the initiation of this suit forced it to notify the League that the Kick would be inactive during the 1991-1992 season.
 
 
 7
 In the proceedings below, the League argued that the timing of this announcement, which occurred three days before the opening of training camps, seriously injured the fledgling enterprise because it required that the season be rescheduled, caused unanticipated expenditures, and damaged the League's public image. The League thus sued Capitaland, five of its officers, CDSE, and O'Hara. The complaint sought the following relief: a declaratory judgment giving the League access to Capitaland's letters of credit, liquidated damages against CDSE and O'Hara for breach of contract, damages for fraud committed by CDSE and O'Hara, damages for fraud on the part of Capitaland and its officers, and damages from all defendants for violating Ohio Revised Code Sec. 2923.31 (engaging in pattern of corrupt activity). After the action was removed to federal court, Capitaland cross-claimed against CDSE and O'Hara for breach of contract.
 
 
 8
 At the conclusion of the jury trial, the district court directed verdicts in favor of defendants on all but two counts. The judge permitted the jury to consider the League's allegation of fraud against O'hara and Capitaland's breach of contract cross-claim. The court also ruled that the League properly drew on the letters of credit posted by Capitaland.
 
 
 9
 The jury awarded Capitaland $150,000 for its cross-claim against O'Hara and CDSE. It also awarded $100,000 to the League in its fraud claim against O'Hara and determined that punitive damages were warranted. In the wake of the jury's verdict, the court awarded attorneys' fees to the League and Capitaland in the amounts of $91,139.64 and $18,000, respectively, and set the amount of punitive damages at $500,000.
 
 II.
 A. Punitive Damages Against CDSE
 
 10
 Although the district court assessed punitive damages against both CDSE and O'Hara, this appears to have been a clerical error. The court not only directed a verdict in favor of CDSE on the fraud claim, its memorandum opinion explaining the award of punitive damages limits its discussion to O'Hara.[2]
 
 
 11
 Accordingly, we reverse the award of punitive damages against CDSE.
 
 B. Punitive Damages Against O'Hara
 
 12
 In Ohio, to recover punitive damages the plaintiff "must establish not only the elements of the tort [e.g., fraud] itself but, in addition, must either show that the fraud is aggravated by the existence of malice or ill will, or must demonstrate that the wrongdoing is particularly gross or egregious." Charles R. Combs Trucking, Inc. v. International Harvester Co., 466 N.E.2d 883, 12 Ohio St.3d 241 (1984) (syllabus para. 3); Ohio Rev.Code Ann. Sec. 2315.21(B)(1) (Anderson 1991). Malice, in turn, is defined as follows:
 
 
 13
 Actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.
 
 
 14
 Preston v. Murty, 512 N.E.2d 1174, 32 Ohio St.3d 334 (1987) (syllabus). Furthermore, punitive damages are authorized within the context of a breach of contract action when fraud exists. See Carrera v. Sandman, 584 N.E.2d 753, 755, 65 Ohio App.3d 422, 426 (1989).
 
 
 15
 Our review of the jury instructions reveals that the district court properly framed the prerequisites for an award of punitive damages. While O'Hara contends that his actions fell short of these prerequisites, the jury concluded to the contrary. Absent clear error, we will not disturb the jury's factual findings.
 
 
 16
 The award of punitive damages in the amount of $500,000 is therefore affirmed.[3]
 
 C. Attorneys' Fees Against O'Hara
 
 17
 An award of attorneys' fees is proper when punitive damages have been assessed. Villella v. Waikem Motors, Inc., 543 N.E.2d 464, 470, 45 Ohio St.3d 36, 41 (1989) (fees recoverable when punitive damages proper). Because we affirm the award of punitive damages against O'Hara, we likewise affirm the award of attorneys' fees.
 
 D. Breach of Contract by CDSE
 
 18
 With respect to the breach of contract claim advanced by Capitaland, defendants attack the jury instructions given by the district court on the affirmative defense of material misrepresentation.
 
 
 19
 Over the objections of counsel for defendants, the court instructed the jury on the affirmative defense of fraud, not material misrepresentation as requested. We have defined this defense in the following terms: "[M]isrepresentation in the procurement of a contract renders the agreement voidable by one induced thereby, irrespective of the culpability of the person making the misrepresentation." Ott v. Midland-Ross Corp., 600 F.2d 24, 32 (6th Cir.1979). The trial court, however, instructed the jury that Capitaland must have known its representations to be false to trigger the affirmative defense. In this respect, the district court erred.
 
 
 20
 That conclusion does not end our inquiry. To warrant reversal, an inaccurate jury instruction must result in substantial and prejudicial error. Hurt v. Coyne Cylinder Co., 956 F.2d 1319, 1324 (6th Cir.1992). Given the evidence introduced at trial, we conclude that the challenged instruction, while erroneous, did not result in the prejudice required to compel reversal. First, CDSE was aware of the cost of the franchise to Capitaland at the time of purchase because it received a copy of the cancelled check for $25,000. Thus, even if one of Capitaland's investors wrongly told O'Hara that the franchise cost $50,000, this error was corrected at the time of purchase. Second, the purchase agreement values the team's property at $5,000, undercutting any claim by CDSE that it relied upon inflated representations of the property's value. Third, the jury clearly found O'Hara, upon whose testimony defendants relied to establish their affirmative defense, to be a less than credible witness, inasmuch as it found that he committed fraud.
 
 
 21
 Accordingly, we affirm the jury's award of $150,000 to Capitaland for its breach of contract claim.
 
 E. Attorneys' Fees Against CDSE
 
 22
 The district court premised the award of attorneys' fees to Capitaland on the provision in the promissory note signed pursuant to the sale of the franchise providing, "The Maker agrees to pay all costs and expenses incurred by the Payee in collecting or attempting to collect this Note, including, without limitation, reasonable attorneys' fees and court costs." Under New York law, which the promissory note stipulates shall govern its terms, such provisions are valid. We therefore affirm the award of attorneys' fees.
 
 III.
 
 23
 For the foregoing reasons, the award of punitive damages against CDSE is reversed and the remainder of the judgment is affirmed.
 
 
 
 [1]
 Capitaland agreed to keep its own letters of credit in force in the interim
 
 
 [2]
 The League has not contested this point on appeal
 
 
 [3]
 O'Hara limits his argument to the appropriateness of punitive damages and does not independently attack the amount assessed by the district court