KILGORE–COLVIN, Appellee,

v.

ROME HILLIARD SELF–STORAGE, INC., Appellant.

[Cite as *Kilgore–Colvin v. Rome Hilliard Self-Storage, Inc.* (1998), 129 Ohio App.3d 326.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 98AP–17.

Decided Aug. 11, 1998.

*Christopher L. Lardiere* and *Thomas L. Magelaner*, for appellee.

*Scott W. Spencer*, for appellant.

TYACK, Judge.

On November 27, 1996, Roberta Kilgore–Colvin filed a complaint against Rome Hilliard Self–Storage, Inc. ("RHSS"), asserting a claim for conversion. Kilgore–Colvin had stored certain personal property in two of RHSS's storage units. After Kilgore–Colvin failed to pay the rent due on the units, RHSS sold her property at an auction. More detailed facts will be discussed below.

The case was tried before the court, and the trial court announced its decision from the bench. On December 12, 1988, a judgment entry was journalized, granting judgment in favor of Kilgore–Colvin. The trial court awarded Kilgore–Colvin $663.50 in compensatory damages, $1,836.50 in punitive damages, and $2,955.00 for costs, interest, and attorney's fees.

RHSS (hereinafter "appellant") has appealed to this court, assigning the following as error:

"I. Whether the trial court erred when it judicially imposed additional requirements not created by the General Assembly in enacting statutes which authorize a self–service storage facility the right to conduct an auction to foreclose on a lien on stored contents as created by such statute.

"II. Whether the trial court erred in awarding damages when it expressly held that the plaintiff/appellee failed to meet her burden of proof as to the value of the property stored within the self–service storage facility.

"III. Whether the trial court erred when it awarded the plaintiff/appellee punitive damages for the alleged conversion of the plaintiff's property in the absence of evidence or a finding that the alleged conversion was the result of wanton, reckless or willful conduct by the defendant/appellant."

In its first assignment of error, appellant asserts that the trial court imposed additional requirements beyond the statutory requirements governing self-service storage facilities. Specifically, appellant contends that the trial court erred in concluding that the auction here was not commercially reasonable, that it should have been known what was being bid on, and that Kilgore–Colvin (hereinafter "appellee") was not properly notified. Appellee asserts that the trial court did not impose additional requirements and that appellant failed to follow the procedure established by statute.

The statute at issue here is R.C. Chapter 5322. R.C. 5322.02(A) states:

"The owner of a self-service storage facility has a lien against the occupant on the personal property stored pursuant to a rental agreement in any storage space at the self-service storage facility, or on the proceeds of the personal property subject to the defaulting occupant's rental agreement in the owner's possession, for rent, labor, or other charges in relation to the personal property that are

specified in the rental agreement and that have become due and for expenses necessary for the preservation of the personal property or expenses reasonably incurred in the sale or other disposition of the personal property pursuant to law."

R.C. 5322.03 establishes the procedure to be followed when an owner of a self-service storage facility seeks to enforce such a lien:

"An owner's lien created by division (A) of section 5322.02 of the Revised Code for a claim that has become due may be enforced only as follows:

"(A) All persons [who] the owner has actual knowledge claim an interest in the personal property * * * shall be notified in accordance with divisions (B) and (C) of this section;

"(B) The notice shall be delivered in person or sent by certified mail to the last known address of each person who is required to be notified by division (A) of this section;

"(C) The notice shall include:

"(1) The name and last known address of the occupant who rented the storage space in which the personal property was stored;

"(2) An itemized statement of the owner's claim showing the sum due at the time of the notice and the date when the sum became due;

"(3) A brief and general description of the personal property subject to the lien. * * *

"(4) A notice of denial of access to the personal property, if a denial of access is permitted under the terms of the rental agreement, which notice provides the name, street address, and telephone number of the person whom the person notified may contact to pay the claim and to either obtain the personal property or enter into a rental agreement for the storage of the personal property;

"(5) A demand for payment within a specified time not less than ten days after delivery of the notice;

"(6) A conspicuous statement that unless the claim is paid within that time the personal property will be advertised for sale and will be sold by auction at a specified time and place and that, if no person purchases the personal property at the auction, the personal property may be sold at a private sale or destroyed;

"(7) The address of the place at which the sale will be held, if the sale will be held at a place other than the self-service storage facility in which the personal property was stored."

Further, R.C. 5322.03 sets forth the procedure for the sale of personal property subject to the lien:

"(D) The sale of the personal property shall conform to the terms of the notice as provided for in this section;

" * * *

"(F) After the expiration of the time given in the notice, an advertisement of the sale shall be published once a week for two consecutive weeks in a newspaper of general circulation in the county in which the self-service storage facility is located. * * *

" * * *

"The sale shall take place at least fifteen days after the first publication. * * *

"(G)(1) Before any sale of personal property pursuant to this section, any person who has a legal interest * * * in the personal property may pay the amount necessary to satisfy the lien and the reasonable expenses incurred under this section."

The facts adduced at trial established the following: Appellee entered into a rental agreement with appellant on one storage unit on August 27, 1996. Appellee placed her personal property in the storage unit. The following day, August 28, 1996, appellee put more of her personal property in a separate storage unit. No rental agreement was executed for the second unit.[1] Under the terms of the rental agreement, rent was due on the 27th day of each month. Appellee paid the rents for the first month.

Appellee provided appellant with the address and phone number of the residence from which she was moving. Appellee did not know where she would be living and, therefore, had no forwarding address. As a contact, appellee gave appellant the phone number of a friend, Jerry Williams, who worked in Columbus.

Appellee failed to pay rent due on September 27, 1996. (Appellee also did not pay rent due on the second unit.) On October 3, 1996, Lija L. Eldridge, wife of appellant's owner and manager of the facility, sent by certified mail a late notice to appellee's old address. This notice was returned as undeliverable. On October 10, 1996, a second late notice was sent to the same address. This was also returned. On October 21, 1996, appellant mailed a "LIEN–SALE NOTICE" to the same address, which stated that a sale would be held on November 7, 1996, unless payment was made by October 26, 1996. This was returned.

---

1. Appellee makes note of this fact in her argument; however, appellee did not file a cross-appeal as to any alleged error regarding this issue, and the trial court included appellee's property in the second unit in its award. Therefore, we do not address this issue and use the dates relating to the first unit in our discussion of the pertinent issues.

On October 30 and November 4, 1996, appellant ran notices in the Columbus Dispatch regarding the sale of appellee's personal property at a public sale to be held on November 7, 1996. On November 4, 1996, Eldridge attempted to call appellee at the number appellee had left; however, this number was disconnected. Eldridge also attempted to reach Williams at his work number; however, she was told that he worked third shift and/or was on vacation.

On November 7, 1996, appellee's personal property from both storage units was sold. The contents of the first storage unit sold for $353.50, and the contents of the second unit sold for $310, for a total of $663.50. On November 11, 1996, appellee called appellant and spoke with Eldridge. Appellee told Eldridge that she had the money due for rent; however, Eldridge informed appellee that her property had been sold. Appellee claims that her property was worth approximately $92,000.

█ The trial court found that appellant failed to comply with R.C. 5322.03. We agree. Appellant sent its first late notice to appellee on October 3, 1996. This notice did not comply with R.C. 5322.03(C)(3), (5), or (6) because it did not describe the property, did not demand payment within a specified time not less than ten days after delivery of the notice, and did not contain a conspicuous statement regarding sale of the property. Indeed, it said nothing about the sale of the property.

█ The October 21, 1996 lien-sale notice letter also did not comply with R.C. 5322.03. This letter stated, in regular type identical to the type in the rest of the letter:

"The sale will be held on November 7, 1996 at 11:00 a.m. If you pay your unpaid balance by closing hour of 6:00 p.m., Saturday, October 26, 1996, your account will not go to advertising and will not be charged the $60.00 advertising fee."

This does not conform to R.C. 5322.03(C)(5) and (6) because it was not conspicuous and the demand for payment did not include a date not less than ten days after delivery of the notice.

█ In addition, any demand for payment and the sale date did not conform to the time limits established by R.C. 5322.03(C)(5) and (F). Pursuant to R.C. 5322.03(C)(5), even if we use the October 3, 1996 letter as the starting point, appellant could not have demanded that payment be made until October 13, 1996. Then, under R.C. 5322.03(F), the pending sale must be advertised for two consecutive weeks after October 13, 1996.

Here, the advertisements ran on October 30 and November 4, 1996. Pursuant to R.C. 5322.03(F), the sale could not take place until fifteen days after the date of the first publication. In this case, that date would be fifteen days after October 30, 1996, which would have been November 14, 1996. However, the sale here occurred on November 7, 1996. Of course, had we used the October 21, 1996 letter as the starting point, the November 7, 1996 sale would also not have complied with statute.

Given the above, the trial court did not err in finding that appellant failed to comply with the requirements in R.C. 5322.03. Accordingly, appellant's first assignment of error is overruled.

█ In its second assignment of error, appellant contends that the trial court erred in awarding appellee compensatory damages, since the trial court itself found that appellee failed to prove such damages. While the trial court did state that appellee failed to prove the value of the property she alleged had been sold, it is clear that the trial court simply did not believe appellee's testimony in its entirety as to what things she had stored and/or their values. However, the trial court had before it clear evidence that some of appellee's property had been stored, and all of the stored property had been sold.

There was evidence supporting at least some of appellee's claimed losses. In addition, the trial court pointed out that appellant proved loss by the mere fact that somebody looked at boxes and made a bid. Hence, the trial court valued appellee's property stored at the price it sold for—$663.50.

Given the above, the trial court did not err in awarding appellee compensatory damages. Accordingly, appellant's second assignment of error is overruled.

█ In its third assignment of error, appellant contends that the trial court erred in awarding appellee punitive damages because there was no finding or evidence that appellant acted in a wanton, reckless, or willful manner. Appellant contends that it was simply mistaken as to the requirements under R.C. 5322.03.

R.C. 5322.03(M)(2) states:

"The owner is liable for damages caused by the failure to comply with the requirements for sale under this section and is liable for conversion for willful violation of the requirements for sale under this section."

█ Here, the trial court specifically found that a conversion had occurred. Under R.C. 5322.03(M)(2), a conversion occurs only when there has been a willful violation. As to punitive damages, such damages are allowed in civil tort actions

that involve fraud, malice, or insult. *Villella v. Waikem Motors, Inc.* (1989), 45 Ohio St.3d 36, 37, 543 N.E.2d 464, 466–467, modified on other grounds in *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 635 N.E.2d 331, paragraph two of the syllabus. Elements of malice necessary to support a punitive damages award are that the defendant operated under that state of mind characterized by hatred, ill will, or a spirit of revenge or a conscious disregard for the rights and safety of others that has a great probability of causing substantial harm. *Id.* Actual malice can be inferred from conduct and surrounding circumstances that may be characterized as reckless, wanton, willful, or gross. *Id.*

The evidence here supports a punitive damages award. Appellant's conduct at the very least can be characterized as reckless. Eldridge testified that she had tried to make herself very aware of the pertinent provisions of the Ohio Revised Code. Appellant's deviations from those provisions were obvious. In the October 21, 1996 notice, appellee was given only five days to become current, and the statute requires at least ten days. Eldridge appeared to be somewhat knowledgeable about this provision. The evidence shows that had appellant complied with R.C. 5322.03, appellee's property, property which appellee claims was personal property accumulated over thirty years, would not have been sold.

Given the above, the trial court did not err in awarding appellee punitive damages. Accordingly, appellant's third assignment of error is overruled.

Having overruled all of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.