WARE, APPELLEE, v.
RICHEY, APPELLANT.∎

4

(Nos. 46824 and 47199—Decided December 27, 1983.)

*Mr. Jeffrey Spiegler,* for appellee.

*Mr. Marshall I. Nurenberg, Mr. John J. McCarthy* and *Ms. Susan Reinker,* for appellant.

PRYATEL, J. Plaintiff-appellee, Mattie Ruth Ware, was awarded $137,000 by a jury from her battery claim arising out of surgery performed on her right hand. Plaintiff was also awarded prejudgment interest on this award. For the following reasons we reverse and remand.

Plaintiff's complaint sought recovery based on the negligence and/or battery of defendants deWayne G. Richey, M.D., Michael Fischer, M.D., Raghaza Raju, M.D., and St. Luke's Hospital. On November 4, 1981, all defendants were granted summary judgment as to plaintiff's negligence claim. On January 14, 1982, plaintiff dismissed the remaining battery claim as to Dr. Fischer and Dr. Raju. Plaintiff's battery claim against the remaining defendants (Richey and St. Luke's Hospital) was heard by a panel of

three arbitrators who unanimously held in favor of the defendants.

Plaintiff appealed that decision to the court of common pleas and at a trial *de novo* the following evidence was adduced. Plaintiff, who was left-handed, testified that she chose to have plastic surgery done to her right hand to improve movement in her middle finger. This hand had been badly scarred in a fire when plaintiff was three months old, but she was still able to perform many functions such as moving the middle finger down to touch her palm allowing her to grip objects. Plaintiff testified that the ring finger on her right hand, which was also deformed, did not hinder her movement of the middle finger and that the ring finger itself had some movement. Plaintiff testified that defendant Richey informed her at an examination that a skin graft would be necessary and that he would extract the needed skin from her buttocks. He also told her that there may be circulation problems in the middle finger. Plaintiff signed a consent form provided by defendant Richey.

The day following the operation plaintiff was in great pain and asked defendant Richey what was causing it. He informed her that he had removed the right ring finger because it was in the way and to obtain the skin necessary for the graft. Plaintiff testified that she became hysterical over this information and was sedated. Plaintiff testified that her middle finger was less flexible after the operation and that she had no feeling in it. She further testified that she had never been told that her ring finger would be amputated or that there was a chance her middle finger would actually be less mobile. Plaintiff testified that her right hand was constantly in pain after the surgery.

Defendant Richey testified that he informed plaintiff that he would remove the ring finger and that complications could result in the loss of her middle finger as well. This testimony was corroborated by Dr. Michael Fischer. Both denied that plaintiff became hysterical when told of the amputation.

At the close of all evidence, both remaining defendants moved for a directed verdict. This motion was overruled as to Dr. Richey, but granted as to St. Luke's Hospital. Defendant Richey thereafter submitted four interrogatories for the jury. The trial court refused to give any of them. The jury then returned a verdict in favor of plaintiff. On March 1, 1983, defendant moved for judgment notwithstanding the verdict or in the alternative a new trial. That motion was overruled. Subsequently, a hearing was conducted by the court pursuant to R.C. 1343.03(C) and prejudgment interest on the award was granted to plaintiff. Dr. Richey appeals citing ten assignments of error.

Assignment of Error No. I:

"I. The trial court erred to defendant's prejudice in failing to submit defendant's interrogatories to the jury when the interrogatories were directed toward determinative issues and correctly stated the law on those issues."

This court, in *Lawson* v. *Sivillo* (May 15, 1980), No. 41284, unreported, citing *Ragone* v. *Vitali & Beltrami, Jr., Inc.* (1975), 42 Ohio St. 2d 161 [71 O.O.2d 164], held that when interrogatories, which are dispositive of determinative issues, are submitted to the court pursuant to Civ. R. 49(B), there is a mandatory duty on the trial court to submit them to the jury, although the trial court retains the discretion to submit them in the proper form and language.

In the instant case, appellant submitted four interrogatories to the court for submission to the jury. The court, without any explanation on the record, refused to submit any of them.

Interrogatories Nos. 1 and 2 read:

"1. Do you find by a preponderance of the evidence that plaintiff Mattie

Ruth Ware was advised that her right ring finger was going to be removed before the surgery performed on September 22, 1978?

"2. Do you find by a preponderance of the evidence that plaintiff Mattie Ruth Ware was advised of all the material risks attendant to the surgery performed on her right middle finger before the surgery was done on September 22, 1978?"

We find these interrogatories to be in acceptable form aimed at determinative issues. Appellee contends that the use of the word "advise" was improper. The word "advise" encompasses meanings such as informed, told, stated, counseled and warned. Indeed, we can think of no word that is more accurate or used as frequently as "advise" to describe the imparting of medical information to a patient by her doctor. Moreover, throughout its jury instructions on this aspect of the case, the court used the term "advise" without objection from appellee.

Accordingly, we sustain the objection of appellant to the court's failure to submit Interrogatories Nos. 1 and 2 to the jury.

Interrogatory No. 3 reads:

"3. If your answer to either Question No. 1 or Question No. 2 was 'no' what injuries do you find plaintiff Mattie Ware sustained due to the surgery performed on September 22, 1978?"

As may be noted, the jury is asked to respond to this question in the alternative. That is, if the jury answers "no" to *either* Interrogatory No. 1 or No. 2 (but not both), they are then asked what injuries did Mattie Ruth Ware sustain. If the answer to Interrogatory No. 1, *supra,* is "no," no determinative issue is resolved in Interrogatory No. 3, since it is undisputed that her right ring finger was amputated, a conclusion that is inescapable and which both parties concede. We find this interrogatory to be confusing and potentially prejudicial to

appellee. See *Riley* v. *Cincinnati* (1976), 46 Ohio St. 2d 287, 299 [75 O.O.2d 331].

As to Interrogatory No. 3, the assignment of error is overruled.

Interrogatory No. 4 reads:

"4. If you find by a preponderance of the evidence that plaintiff Mattie Ruth Ware sustained injuries directly and proximately resulting from the surgery performed on September 22, 1978 then what amount of money do you feel will compensate the plaintiff for that injury?"

With respect to Interrogatory No. 4, we find that it is merely an echo of appellee's prayer and provides no test of the verdict. The question requests no more information than that which would be contained in the jury's general verdict as it fails to distinguish the amount of compensation for each injury. If the jury had been requested to allocate a separate sum for each of the two injuries and in its answer allocated a larger amount for the reduced mobility of the middle finger, as opposed to that amount allocated for the amputated finger, a question of prejudice or passion would arise. Hence, the interrogatory in its present form fails to test the jury's verdict. The assignment of error is overruled with respect to Interrogatory No. 4.

Accordingly, the first assignment of error is sustained as to Interrogatories Nos. 1 and 2 and overruled as to Interrogatories Nos. 3 and 4.

Assignments of Error Nos. II and III:

"II. The trial court erred in denying defendant's motion for directed verdict and judgment notwithstanding the verdict on plaintiff's informed consent claim alleging injury to her middle finger where plaintiff failed to produce expert testimony regarding the elements of such a claim.

"III. The trial court erred to defendant's prejudice by denying defendant's motion for directed verdict and for judgment nothwithstanding the verdict

where plaintiff failed to establish by medical expert testimony that her alleged pain and loss of mobility and sensation in her middle finger were proximately caused by the acts of defendant."

Appellant's second and third assignments of error are interrelated and will be dealt with together. Both assignments of error focus on the absence of expert testimony on appellee's behalf on the injuries to her middle finger.

In order to prevail on a claim for a lack of informed consent the Ohio Supreme Court held in *Bruni* v. *Tatsumi* (1976), 46 Ohio St. 2d 127, at 136 [75 O.O.2d 184], that:

(1) An unrevealed risk which should have been made known must materialize;

(2) The unrevealed risk must be harmful to the patient; and,

(3) Causality exists only when the disclosure of significant risks incidental to the treatment would have resulted in the patient's decision against the treatment.

Additionally, several courts have held that medical expert testimony is necessary to establish the significant risks which should have been disclosed to support the plaintiff's claim. *Rhodes* v. *Doctors Hospital North* (App. 1980), 18 O.O. 3d 391, 394; *Vance* v. *Rivera* (May 2, 1979), Hamilton App. No. C-780206, unreported. We agree with that line of cases since the probability and magnitude of those risks is a matter of medical judgment beyond the knowledge of the lay person.

However, in the instant case, appellee presented sufficient expert testimony, through the cross-examination of appellant, to establish the elements of her claim and the proximate cause of that injury. Proximate causation was supplied by appellant's

own testimony when he stated that the risk of loss of movement was attendant to this type of surgery. Moreover, an additional loss of movement of the middle finger (other than that originally caused by appellee's burns) occurred after surgery. Hence, a causal link was established.

With respect to the unrevealed risk which did materialize, appellant testified that loss of movement in appellee's middle finger was a risk of surgery. Appellee had already testified (and the jury found) that this risk had not been made known to her. Appellant's own testimony that he informed appellee of such risk is additional reinforcement of a duty to disclose that information. *Rhodes, supra,* at 394.

According to appellee's testimony this risk (the loss of movement) was harmful to her. Her dexterity and ability to do functions she could perform before surgery were seriously and adversely affected by this operation. Appellee also testified that she would not have accepted this risk had she been fully informed.

Accordingly, appellee has presented sufficient expert testimony of all the necessary elements required by *Bruni, supra,* as well as the proximate cause of her injuries. The second and third assignments of error are overruled.

Assignment of Error No. IV:

"IV. The trial court erred, to the prejudice of defendant, by admitting into evidence, over defendant's objection, a written consent form utilized by the hospital for a type of surgery unrelated to plaintiff or the procedure undergone by plaintiff."

Despite objecting to this consent form when it was marked for identification, appellant failed to renew this objection when the form was admitted into evidence.[1] Moreover, appellant cross-

---

[1] The form may have been subject to objection because of a lack of foundation and later again subject to another objection, because it was not admissible as to defendant Richey.

examined Mr. Newbold, the witness who identified it as a form used by St. Luke's Hospital. As such, appellant has waived any objections to this evidence whether by oversight or for tactical reasons. See *Stores Realty Co.* v. *Cleveland* (1975), 41 Ohio St. 2d 41 [70 O.O.2d 133].

Furthermore, this form was admitted into evidence prior to the time St. Luke's Hospital's motion for a directed verdict was granted. As evidentiary material its focus would be on the informed consent issue with respect to St. Luke's Hospital and not with respect to defendant Richey. After St. Luke's Hospital had been directed out, this form would have little use against the remaining defendant (appellant). Hence, we find that it was not error to admit this form into evidence while St. Luke's Hospital was still in the case.

Appellant's fourth assignment of error is overruled.

Assignment of Error No. V:

"V. The trial court erred to the prejudice of defendant by entering judgment on a verdict against the manifest weight of the evidence."

The relevant issue at trial was whether appellee had been informed of and given her consent to the procedures and risks of the surgical operation performed by appellant. "Judgments [which are] supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C. E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261], syllabus. Appellee testified

that she was not informed as to these risks and procedures while appellant contended that she had been fully informed and had consented. Thus, the issue resolves itself as one of fact within the province of the jury.

Accordingly, appellant's fifth assignment of error is overruled.

Assignment of Error No. VI:

"VI. The trial court erred in awarding prejudgment interest where plaintiff failed to put forth a prima facie case regarding defendant's failure to make a good faith effort to settle the case."

This issue may not present itself on remand since (1) appellant may offer an acceptable settlement, or (2) appellant may receive a favorable verdict upon retrial. While we hesitate to embark on a discussion of issues that may not confront the lower court on remand, we shall treat them in accordance with App. R. 12(A).

Appellant contests the application in the case at bar of R.C. 1343.03(C),[2] allowing for interest to be calculated from the date the action accrued. The statute allows prejudgment interest to be awarded at a postjudgment hearing where (1) the party required to pay the judgment failed to make a good faith effort to settle the case, and (2) the party to whom the money is to be paid did not fail to make a good faith effort to settle.

Supporting the position that he did not fail to make a good faith effort to settle is appellant's own testimony. He testified that he had informed appellee of all the procedures and risks prior to surgery and that appellee still consented

---

[2] R.C. 1343.03(C) reads:

"Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."

to the operation. This testimony was corroborated by Michael Fischer, M.D., who assisted appellant prior to surgery. Further support for appellant's belief that a settlement offer was unnecessary is the outcome of the arbitration panel which unanimously found in favor of appellant.

Perhaps the most telling argument is appellee's failure to list as a witness any medical specialist she would call during trial, or extend a copy of an expert opinion to appellant, advising him of the medical authority she would rely upon to prove her case. In the absence of her own expert's testimony, appellee would be required to prove her case through the testimony of the appellant or his expert witness. In such a circumstance, appellant's expert testimony would be unrebutted which would justify appellant's belief that he would prevail.

A lack of good faith (the equivalent of bad faith) requires more than bad judgment or negligence. Rather, it imports a dishonest purpose, conscious wrongdoing or breach of a known duty based on some ulterior motive or ill will in the nature of fraud. *Centennial Ins. Co.* v. *Liberty Mut. Ins. Co.* (1980), 62 Ohio St. 2d 221, 224 [16 O.O.3d 251], citing *Slater* v. *Motorist Mut. Ins. Co.* (1962), 174 Ohio St. 148 [21 O.O.2d 420], paragraph two of the syllabus.[3] In the instant case, we are unable to find any support in the record for the trial court's finding of appellant's lack of good faith. That is not to say that a lack of good faith could not be found after a retrial, since appellant has already had a sizeable verdict rendered against him once.

Accordingly, appellant's sixth assignment of error is sustained.

Assignments of Error Nos. VII, VIII, IX and X:

"VII. Ohio Revised Code Section 1343.03(C) by its languange [*sic*] permitting the trial judge without a jury to hold a post-trial hearing to assess prejudgment interest, is in contravention of Article I, Section 5 of the Ohio Constitution and Ohio Revised Code Section 2311.04 which provides for a trial by jury on issues of fact arising in actions for the recovery of money only.

"VIII. Insofar as Ohio Revised Code Section 1.58 prohibits the application of a reinacted [*sic*] or amended statute to pending matters, it was error for the trial court to apply Ohio Revised Code Section 1343.03, at all, to the case at bar.

"IX. The trial court erred by applying Ohio Revised Code Section 1343.03(C) retroactively in violation of Article II, Section 28 of the Ohio Constitution and in contravention of Ohio Revised Code Section 1.48.

"X. Even if prejudgment interest may appropriately be awarded against defendant from September 22, 1978, the trial court erred in computing such interest at 10% per annum during the entire period."

Although appellant cites these four issues as error, they are not properly before this court. It is well-settled that an appellate court will not consider questions not presented, considered or decided by a lower court. *Kalish* v. *Trans World Airlines* (1977), 50 Ohio St. 2d 73 [4 O.O.3d 195]. Appellant failed to raise these questions below; hence, we do not decide them here.

This judgment is reversed and the cause is remanded to the court of common pleas for further proceedings consistent with this opinion.

---

[3] We further note that, in the context of insurance, the mere fact that an insurer refuses to settle within the limits of the policy is not conclusive of the insurer's bad faith. Rather, the insured has the burden to show that the refusal to settle was not made in good faith. *Hoskins* v. *Aetna Life Ins. Co.* (1983), 6 Ohio St. 3d 272, 276.

It is, therefore, considered that said appellant recover of said appellee his costs herein.

*Judgment reversed and cause remanded.*

PATTON, C.J., and PARRINO, J., concur.