JOURNAL ENTRY AND OPINION
{¶ 1} This appeal is before the Court on the accelerated docket pursuant to App.R. 11.1 and Loc.App.R. 11.1.
{¶ 2} Plaintiffs-appellants, Harold J. Turner, Jr. and Sandra Turner, appeal the judgment of the Cuyahoga County Court of Common Pleas granting the motion for a directed verdict by defendant-appellee, The Cleveland Clinic Foundation (The Clinic). Finding no merit to appellants' appeal, we affirm.
{¶ 3} The record reflects that appellants filed this medical malpractice action on January 26, 2000 against appellee and Dr. Douglas Chyatte. In their complaint, appellants alleged that Dr. Chyatte, as an employee of The Clinic, committed medical malpractice by failing to fully inform Mr. Turner of the potential risks and complications of surgery on his brainstem, and that as a result of the surgery, Mr. Turner suffered numerous, severe neurological impairments. Appellants subsequently dismissed Dr. Chyatte from the lawsuit with prejudice.
{¶ 4} On June 28, 2000, the trial court held a pretrial conference and ordered that appellants' expert report be provided to appellee by November 1, 2000.
{¶ 5} On February 9, 2001, appellee filed a motion for summary judgment, asserting that appellants had failed to produce an expert to support their medical malpractice claim. In their brief in opposition to appellee's motion, appellants argued:
 {¶ 6} Plaintiff agrees that expert testimony is required in an informed consent case to establish the significant risks which should have been disclosed to the Plaintiff and the probability and magnitude of those risks, which is a matter of medical judgment beyond the knowledge of the lay person. Ware v. Richey (1983), 14 Ohio App.3d 3, 7 [overruled on other grounds, Kalain v. Smith (1986), 25 Ohio St.3d 157]. There is in this case, however, ample expert testimony as to those factors in the deposition of Douglas Chyatte, M.D., the operating surgeon, which was taken on November 7, 2000 in Philadelphia and which is being filed contemporaneously with this Memorandum.
{¶ 7} On May 15, 2001, the trial court denied appellee's motion for summary judgment.
{¶ 8} On July 11, 2001, appellee filed a motion for reconsideration of the trial court's order denying its motion for summary judgment. Upon reconsideration, the trial court again denied appellee's motion. In its order denying appellee's motion, the trial court stated:
 {¶ 9} According to the Ohio Supreme Court in Bruni v. Tatsumi (1976), 46 Ohio St.2d 127, medical expert testimony is necessary to establish the significant risks which should have been disclosed to the patient. Plaintiffs have chosen to proceed forward with their case without obtaining an expert for their case in chief. On that basis, Defendant believes that it is entitled to summary judgment.
 {¶ 10} However, Plaintiffs have presented case law to this Court that in medical malpractice cases based on lack of informed consent, the Plaintiff may elicit the `existence, nature and magnitude of the allegedly undisclosed risk of harm; and the causal relationship between the allegedly undisclosed risk and the patient's injuries from the doctor defendant himself.' Ware v. Richey (1983), 14 Ohio App.3d 3, 7
(overruled on other grounds, Kalain v. Smith (1986), 25 Ohio St.3d 157). `In a cause of action based upon lack of informed consent, the required expert testimony may be presented through cross-examination of the defendant-physician.' Ware, 14 Ohio App.3d 3. Based upon the foregoing case law, it will be Plaintiffs' burden to elicit such expert testimony from Dr. Chyatte in order to prevail on their claim of lack of informed consent.
{¶ 11} A jury trial commenced on January 28, 2002. Appellants called Dr. Chyatte as if on cross-examination. Despite the trial court's admonition to appellants to elicit expert testimony from Dr. Chyatte, the transcript reflects that appellants' counsel made no attempt to qualify Dr. Chyatte as an expert. He did not ask Dr. Chyatte about his credentials, whether he was currently licensed to practice medicine, or whether he spent the majority of his professional time in the active clinical practice of medicine or teaching. Indeed, although Dr. Chyatte testified that he was no longer employed at the Clinic, appellants' counsel did not elicit any testimony from Dr. Chyatte regarding whether he was currently practicing medicine anywhere.
{¶ 12} With respect to Mr. Turner's surgery, Dr. Chyatte testified that he treated Mr. Turner for a cavernous angioma on his brainstem, a blood vessel malformation in which tiny hemorrhages in the capillaries cause the malformation to expand. Dr. Chyatte testified that he recommended surgery to remove the angioma from Mr. Turner's brainstem and that he performed the surgery in June 1996.
{¶ 13} Dr. Chyatte testified further that the neurologic defects suffered by Mr. Turner are an inherent risk of this kind of surgery and that a patient should absolutely be warned of such risks. He testified that although he could not recall exactly what he said to Mr. Turner, the medical record indicated that he discussed the risks, goals and alternatives to surgery with Mr. Turner on three separate occasions.
{¶ 14} Dr. Chyatte agreed that Mr. Turner was much worse neurologically after the surgery. When asked his opinion why that was, Dr. Chyatte testified:
 {¶ 15} I don't know for sure, but my best guess is that he was much worse after surgery because of mechanical injury to the brainstem that occurred during the very tedious process of dissecting the malformation out of the brain.
{¶ 16} At the close of appellants' case in chief, appellee moved for a directed verdict. The trial court granted appellee's motion, finding that appellants had failed to establish that Dr. Chyatte was competent to render expert testimony under Evid.R. 601(D) and further, that even if Dr. Chyatte were qualified as an expert, appellants had not elicited any expert testimony from him regarding the standard of care in the medical community concerning which risks should have been disclosed. This timely appeal followed.
{¶ 17} Civ.R. 50(A)(4), which provides the standard for directing a verdict, states:
 {¶ 18} When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
{¶ 19} A directed verdict is appropriate where the party opposing it has failed to adduce any evidence on the essential elements of his or her claim. Harris v. Ali, M.D. (May 27, 1999), Cuyahoga App. No. 73432, citing Glover v. Boehm Pressed Steel Co. (1997), 122 Ohio App.3d 702. A motion for a directed verdict tests the legal sufficiency of the evidence to take the case to the jury and, therefore, presents a question of law, not one of fact. Harris, supra, citing Wagner v. Midwestern Indemn. Co. (1998), 83 Ohio St.3d 287, 294.
{¶ 20} The doctrine of informed consent is based on the theory that every competent human being has a right to determine what shall be done with his or her own body. Siegel v. Mt. Sinai Hosp. (1978),62 Ohio App.2d 12. The law of informed consent has never required that the physician, prior to administering the treatment, fully inform the patient of all the potential risks. Bedel v. Univ. of Cincinnati Hospital (1995), 107 Ohio App.3d 420, 427, citing O'Brien v. Angley (1980),63 Ohio St.2d 159. Rather, the proper standard of disclosure was set forth by the Supreme Court of Ohio in Nickell v. (1985), 17 Ohio St.3d 136, at the syllabus:
 {¶ 21} The tort of lack of informed consent is established when:
 {¶ 22} (a) The physician fails to disclose to the patient and discuss the material risks and dangers inherently and potentially involved with respect to the proposed therapy, if any;
 {¶ 23} (b) the unrevealed risks and dangers which should have been disclosed by the physician actually materialize and are the proximate cause of the injury to the patient; and Gonzalez
 {¶ 24} (c) a reasonable person in the position of the patient would have decided against the therapy had the material risks and dangers inherent and incidental to treatment been disclosed to him or her prior to the therapy. See, also, Zarlinga v. Lampert (Feb. 26, 1998), Cuyahoga App. No. 72294.
{¶ 25} This court has repeatedly held that medical expert testimony is necessary to establish the significant risks which would have been disclosed to support the plaintiff's claim since the probability and magnitude of those risks is a matter of medical judgment beyond the knowledge of the lay person. Harris v. Ali (May 27, 1999), Cuyahoga App. No. 73432, citing Ratcliffe v. University Hospitals of Cleveland (Mar. 11, 1993), Cuyahoga App. No. 61791, citing Ware v. Richey, 14 Ohio App.3d 3, 7.[1]
{¶ 26} In West v. Cleveland Clinic Foundation (June 15, 2000), Cuyahoga App. No. 77183, the plaintiffs argued, as in this case, that they did not need expert testimony to prove their claims for medical malpractice and lack of informed consent. This court disagreed, finding that expert testimony is required in all actions for medical malpractice, including those alleging lack of informed consent. We specifically stated:
 {¶ 27} In order to prevail on a claim for lack of informed consent, medical expert testimony is necessary to establish the significant risks which would have been disclosed to support the plaintiff's claim since the probability and magnitude of those risks is a matter of medical judgment beyond the knowledge of the lay person. Id., citing Ratcliffe, supra.
{¶ 28} We noted further that generally, the plaintiff has the burden of proving by expert medical evidence what a reasonable medical practitioner * * * would have disclosed to his patient about the risks incident to a proposed treatment, and of proving that the physician departed from that standard. Id., quoting Bedel v. Univ. OB/GYN Assoc., Inc. (1991), 76 Ohio App.3d 742, 744. Therefore, we concluded, it is clear that medical malpractice claims, including those of lack of informed consent, require expert testimony. Id.[2]
 I.
{¶ 29} Despite our holding in West, and despite their admission in the trial court that expert testimony is required in an informed consent case to establish the significant risks which should have been disclosed to the plaintiff, appellants contend that no expert testimony is necessary in a lack of informed consent case to establish the standard of care, i.e., what a reasonable physician would have customarily disclosed to a patient about the risks incident to treatment. Appellants contend that under the three-part test described in Nickell, expert testimony is necessary only to establish the undisclosed risks of the treatment and whether the plaintiff's condition was caused by an undisclosed risk. Therefore, appellants argue, because Dr. Chyatte testified 1) that severe postoperative neurological deficits were an inherent risk of the brainstem surgery performed on Mr. Turner in June 1996; and 2) that Mr. Turner's postoperative condition was caused by the occurrence of such risk, the only two elements of the tort of lack of informed consent requiring expert testimony were provided by the testimony of Dr. Chyatte. Accordingly, appellants contend, the trial court erred in granting appellee's motion for a directed verdict.
{¶ 30} In support of their argument, appellants refer us to Nickell, supra, wherein the Supreme Court of Ohio stated:
 {¶ 31} One of the great dilemmas in applying this test is the question of how far a doctor must go in establishing whether a potential danger, albeit improbably remote, is sufficiently material to require disclosure. To this end the reasonable patient standard is utilized. * * * `[A] risk is material when a reasonable person, in what the physician knows or should know to be the patient's condition, would be likely to attach significance to the risk or cluster of risks in deciding whether or not to forego the proposed treatment.' Id. at 139. In light of this passage, appellants contend that only those risks a reasonable person would find significant need be disclosed — something a jury can determine without expert testimony. Therefore, appellants contend, expert testimony is not necessary to establish a standard of care regarding what risks should be or are customarily disclosed. We disagree.
{¶ 32} First, the passage from Nickell quoted by appellants does not address whether expert testimony is required to establish a claim for lack of informed consent. Rather, it addresses the standard adopted by the Supreme Court of Ohio for determining when a particular risk or danger is material. In Bruni v. Tatsumi (1976), 46 Ohio St.2d 127, the Supreme Court of Ohio gave a rudimentary description of the tort of lack of informed consent and seemed to suggest that the standard for deciding such claims was whether the patient himself would have rejected the proposed course of treatment if the undisclosed risk had been disclosed to him. In Nickell, however, the Ohio Supreme Court adopted a reasonable person standard, stating that a risk is material if a reasonable person in the patient's position would have chosen not to have the treatment had the material risks been disclosed. Thus, Nickell makes clear that the test is objective, rather than subjective.[3] Valerius v. Freeman (Oct. 19, 1994), Hamilton App. No. C-930658.
{¶ 33} Moreover, it is now axiomatic that generally a plaintiff in a malpractice action is required to provide expert testimony establishing the standard of care and that it was not met. McAlpine v. St. Vincent Charity Hosp. (Dec. 16, 1999), Cuyahoga App. No. 75509. Only those matters within the common, ordinary and general knowledge of mankind need not be established by expert testimony. Ramage v. Central Ohio Emergency Serv., Inc. (1992), 64 Ohio St.3d 97, 103. Failure to provide the recognized standards of the medical community is fatal to the presentation of a prima facie case of medical malpractice by the plaintiffs. McAlpine, supra.
{¶ 34} Appellants contend that such expert testimony is not required in this case, however, because a lack of informed consent claim is a new cause of action, separate and distinct from a conventional medical malpractice case. Contrary to appellants' argument, however, a claim for lack of informed consent is indeed a medical claim. R.C.2305.11(D)(3) provides that a medical claim is any claim * * * that arises out of the medical diagnosis, care, or treatment of any person. See Rome v. Flower Mem. Hosp. (1994), 70 Ohio St.3d 14 (adopting broad definition of medical claim as used in R.C. 2305.11); Schraffenberger v. Persinger (1996), 114 Ohio App.3d 263 (a claim that a doctor negligently communicated to a patient that he was sterile following a vasectomy was a medical claim).
{¶ 35} Therefore, because a claim for lack of informed consent is a medical claim, the plaintiff has the burden of proving by expert medical evidence what a reasonable medical practitioner * * * would have disclosed to his patient about the risks incident to a proposed treatment * * *. West, supra, citing Bedel v. Univ. OB/GYN Assoc., Inc., supra. In short, the plaintiff has the burden of proving — through expert testimony — the standard of care.
{¶ 36} Because appellants did not elicit any expert testimony from Dr. Chyatte regarding the recognized standard of care in the medical community about what risks of the surgery should have been disclosed, appellants failed to set forth a prima facie claim of lack of informed consent. Therefore, the trial court did not err in granting appellee's motion for a directed verdict.
 II.
{¶ 37} Appellants also assert that the trial court erred in finding Dr. Chyatte's testimony not competent, expert testimony.
{¶ 38} Evid.R. 601(D) provides in pertinent part:
 {¶ 39} Every person is competent to be a witness except:
 {¶ 40} (D) A person giving expert testimony on the issue of liability in any claim asserted in any civil action against a physician * * * arising out of the diagnosis, care or treatment of any person by a physician * * * unless the person testifying is licensed to practice medicine and surgery * * * by the state medical board or by the licensing authority of any state, and unless the person devotes at least one-half of his or her professional time to the active clinical practice in his or her field of licensure, or to its instruction in an accredited school * * *.
{¶ 41} Appellants failed to establish that Dr. Chyatte was qualified to render expert testimony under Evid.R. 601(D). At trial, appellants' counsel did not ask Dr. Chyatte about his credentials, whether he was currently licensed to practice medicine, or whether he spent the majority of his professional time in the active clinical practice of medicine. Significantly, Dr. Chyatte testified that he was no longer employed at The Cleveland Clinic Foundation at the time of trial. Appellants' counsel did not ask Dr. Chyatte where he was presently employed and it was unclear from his testimony whether he was even practicing medicine at the time of trial.
{¶ 42} Appellants admit that their counsel failed to elicit any testimony from Dr. Chyatte regarding the specific, technical qualifying points of Evid.R. 601(D) but assert that under Evid.R. 601(D), only expert testimony regarding liability is incompetent if not qualified according to the rule. According to appellants, because Dr. Chyatte did not testify regarding liability, his testimony was not restricted by the rule.
{¶ 43} Appellants' argument is logically inconsistent. Appellants admit they need expert testimony to satisfy the Nickell test and claim that such expert testimony came from Dr. Chyatte, but then argue that they were not required to qualify him as an expert. We fail to understand how Dr. Chyatte could be competent to testify as an expert without being qualified under the rule. We agree with appellants that expert testimony in a lack of informed consent case can be elicited from the defendant-doctor. Ware, supra at 7. Without any demonstration that the witness is qualified as an expert, however, the testimony is not competent, expert testimony. Even assuming, for the sake of argument, that appellants were not required to qualify Dr. Chyatte under Evid.R. 601(D) because his testimony did not relate to liability, it is still readily apparent that appellants failed to qualify Dr. Chyatte as an expert witness. Evid.R. 702 provides that a witness may testify as an expert if * * * the witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony * * *. Here, appellants elicited no testimony whatsoever from Dr. Chyatte regarding his education, training, skill or experience. Moreover, although any doctor licensed to practice medicine is competent to testify on medical issues, Youssef v. Parr, Inc. (1990), 69 Ohio App.3d 679, appellants failed to demonstrate that Dr. Chyatte was currently licensed to practice medicine in Ohio or in any other state. Accordingly, appellants failed to establish that Dr. Chyatte was qualified to render expert testimony.
{¶ 44} Moreover, Dr. Chyatte failed to render any opinion regarding Mr. Turner's injuries to a reasonable degree of medical probability. An expert opinion is competent only if it is held to a reasonable degree of scientific certainty. State v. Benner (1988),40 Ohio St.3d 301, 313. In this context, reasonable certainty means probability. Id. Thus, an expert must state his or her opinion in terms of probability, meaning that he or she must express that there is a greater than fifty percent likelihood that a certain act or failure to act caused a given result. Stinson v. England (1994), 69 Ohio St.3d 451, 455.
{¶ 45} Here, Dr. Chyatte testified that his best guess regarding why Mr. Turner was much worse neurologically after the surgery was because of injury that occurred to the brainstem while he was dissecting the angioma out of the brain. Such testimony clearly does not satisfy the requirement that an expert must state his or her opinion in terms of probability. Indeed, it is not clear from the transcript whether Dr. Chyatte was in fact offering his opinion or merely a guess.
{¶ 46} Appellants' assignment of error is therefore overruled.
Judgment affirmed.
It is ordered that appellee recover of appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, J. AND TERRENCE O'DONNELL, J. CONCUR.
[1] Harris and Ratcliffe misstate the holding in Ware. In Ware, we held that expert testimony is necessary to establish the risks that should have been disclosed to the patient. Subsequent cases citing Ware changed should to would.
[2] At oral argument, appellant's counsel argued that West did not involve a claim for lack of informed consent while defense counsel asserted that it did. Our subsequent review of the complaint in West indicated that the plaintiffs therein did indeed assert a claim for lack of informed consent. Accordingly, we reject appellants' argument that our discussion in West regarding the requirement of expert testimony to establish a claim for lack of informed consent was merely obiter dicta. Although our opinion rather inartfully lumped all of the plaintiffs' claims together under the term medical malpractice, a careful reading of West indicates that the plaintiffs in that case asserted a claim for lack of informed consent and then argued that no medical expert testimony was necessary to support their claim. Therefore, our analysis regarding the requirement of expert testimony in a lack of informed consent case was necessary to the disposition of the case.
[3] Consequently, although the patient might testify about what he or she would have done had the risk been disclosed, such testimony is neither required nor determinative. DiMarco v. Bernstein (Oct. 13, 1988), Cuyahoga App. No. 54406. Moreover, although either side may choose to offer expert testimony on the issue of whether a reasonable person would have declined the treatment given the undisclosed risks, such testimony is not required and may be excluded if the trial court determines that such testimony is not helpful to the jury. Valerius, supra.