OPINION *Page 2 
{¶ 1} Defendant-appellant Mary Jo Slick appeals the January 20, 2006 Judgment Entry, the March 2, 2006 Judgment Entry, and May 9, 2006 Judgment Entry of the Stark County Court of Common Pleas in favor of plaintiff-appellee John R. McIntosh.
 STATEMENT OF THE FACTS AND CASE {¶ 2} At all times pertinent to the within appeal, Mary Jo Slick was a Labor Relations Consultant employed by the Ohio Education Association. As a result of her employment, Slick represented the East Canton Education Association ("ECEA") in March, 1995.
 {¶ 3} On March 1, 1995, the East Canton Board of Education issued appellee John McIntosh a notice of non-renewal, informing him the contract for his position as principal in the Osnaburg Local School District would not be renewed.
 {¶ 4} As a result of McIntosh's non-renewal, the students in the school district rallied, causing the other teachers to become upset with the events taking place in the school buildings. Newspaper reporters and photographers came into the school, and students were walking out of classrooms. Students discussed staging a walkout. On May 10, 1995, 144 of the 320 students enrolled at the high school called in sick, and another 120 signed out during the day.
 {¶ 5} As a result of the incidents, the president of the ECEA called a meeting of the teachers on May 10, 1995. Slick was present at the meeting. The teachers voted in favor of the ECEA president reading a statement at the East Canton Board of Education meeting scheduled for May 13, 1995. Slick prepared the statement. *Page 3 
 {¶ 6} The ECEA President Sharon Griffith read the following statement, written by Slick, at the Board of Education meeting on May 13, 1995:
 {¶ 7} "Let there be no doubt, the ECEA supports the recommendation of the superintendent and urges this board to do the same.
 {¶ 8} "I have personally reviewed every evaluation of each high school teacher. There is not one criticism of any of the teachers, by Mr. McIntosh or any other evaluator, regarding student discipline.
 {¶ 9} "It is just plain wrong for one person to exploit the students and to allow a community to be torn apart with the circus-like atmosphere that has existed in this district."
 {¶ 10} On March 17, 1995, McIntosh filed a complaint against the Osnaburg School District Board of Education in the Stark County Court of Common Pleas, Case Number 1995CV00475, seeking declaratory relief and reinstatement into his employment position; bringing claims of breach of contract, defamation, tortious interference with an employment contract, and a due process violation concerning the district's termination and non-renewal process. The complaint did not name Mary Jo Slick as a defendant.
 {¶ 11} On December 22, 1995, the ECEA filed a complaint for declaratory judgment in the Stark County Court of Common Pleas, seeking a declaration as to whether McIntosh was a tenured teacher in the Osnaburg Local School District. The action was entitled East CantonEducation Association v. John R. McIntosh, Case Number 1995CV02208. McIntosh counterclaimed against the ECEA and filed third-party claims against (1) the Ohio Education Association ("OEA"), (2) Slick, and (3) *Page 4 
Griffith, President of the ECEA, alleging defamation and tortious interference with an employment contract.
 {¶ 12} The actions in 1995CV00475 and 1995 CV02208 were ultimately consolidated by the trial court.
 {¶ 13} On March 20, 1998, the ECEA and the OEA were voluntarily dismissed without prejudice.
 {¶ 14} On October 10, 2000, Griffith and Slick filed a motion for judgment on the pleadings asserting they had been improperly joined in the suit. On November 1, 2000, Judge Boggins granted the motion, entitling its order "Judgment Entry on Motions to Dismiss by Sharon Griffith and Mary Jo Slick." Five days later on November 6, 2000, Judge Boggins entered a nunc pro tunc judgment entry, merely changing the heading to "Judgment Entry Granting Motions for Judgment on the Pleadings." McIntosh filed an appeal from that order with this Court.
 {¶ 15} On November 7, 2000, while the appeal was pending, McIntosh filed another complaint in the Stark County Court of Common Pleas, Case No. 2000CV02802, against Slick and Griffith, re-alleging the same causes of action as those in the prior case: defamation and tortious interference with an employment contract. That case was assigned to Judge Brown.
 {¶ 16} Slick and Griffith both filed motions for summary judgment raising three arguments in support: (1) the claims were barred due to the expiration of the applicable statute of limitations, (2) the claims were barred by the doctrine of res judicata, and (3) the claims fail on the merits because, as a matter of law, there was no breach of *Page 5 
contract, and therefore, there can be no tortious interference with an employment contract.
 {¶ 17} On August 20, 2001, Judge Brown dismissed the claims against Slick and Griffith, finding the complaint had been filed prematurely because the previous case was still pending on appeal. Judge Brown dismissed the action "pursuant to Civil Rule 41(B)(4), for failure other than on the merits, finding:
 {¶ 18} ". . . the November 6, 2000, Judgment Entry [of Judge Boggins in the other consolidated case] was not an adjudication on the merits as a matter of law. Rather, the Entry was a dismissal of the action based upon a procedural error. That error being the improper joining of the claims against Slick and Griffith in a declaratory judgment action, which is the issue currently pending before the Court of Appeals.
 {¶ 19} "The Court agrees that because the November 6, 2001 [sic], Judgment Entry was not a judgment upon the merits, McIntosh is entitled to re-file the claims against Slick and Griffith within one year after its dismissal, however, the Court finds that the one year will not begin to run until the appeal pending before the Court of Appeals and any appeal of that decision is decided. For example, if the Court of Appeals sustains McIntosh's appeal then the case will be remanded to this court for adjudication upon the merits. However, if the Court of Appeals overrules McIntosh's appeal, McIntosh will have one year within which to file his cause of action against Slick and Griffith pursuant to O.R.C. Section 2305.19, the "Savings" Statute."
 {¶ 20} Slick and Griffith each appealed Judge Brown's August 20, 2001 Judgment Entry, and the appeals were consolidated. McIntosh then cross-appealed. *Page 6 
 {¶ 21} On December 27, 2001, this Court[1] found Judge Boggins' November 6, 2000 Judgment Entry, in case numbers 1995CV00475 and 1995CV02208, was not a final appealable order, and this Court lacked jurisdiction to hear the appeal. This Court indicated the dismissal of the appeal did not prejudice any future right the parties have to appeal from a final appealable order.
 {¶ 22} The parties did not file a subsequent appeal in case numbers 1995CV00475 and 1995CV02208 before Judge Boggins.
 {¶ 23} On July 8, 2002, on appeal from Judge Brown's August 20, 2001 Judgment Entry in Case No. 2000CV02802, this Court[2] held:
 {¶ 24} "A dismissal pursuant to Civ.R. 41(B), other than pursuant to Civ.R. 41(B)(4), and any dismissal not provided for in Civ.R. 41, "operates as an adjudication upon the merits unless the court, in its order for dismissal, otherwise specifies." Civ.R. 41(B)(3). "A dismissal without prejudice is not a final determination of the rights of the parties and does not constitute a judgment or final order when refiling or amending of the complaint is possible." Hattie v. Garn (Dec. 29, 1999), 9th Dist. No. 98CA007208, citing Central Mut. Ins. Co. v.Bradford-White Co. (1987), 35 Ohio App.3d 26, 28, 519 N.E.2d 422. See, also, Chambers v. LTV Steel Co. (Sept. 23, 1996), 5th Dist. No. 95-CA-0302.
 {¶ 25} "In this case, the trial court's entry specified that this dismissal was other than on the merits. The language of the entry contemplates that the case will be refiled in the future. Therefore, the order from which Slick and Griffith appeals and McIntosh cross-appeals is not a final determination as to the rights of the parties and is not a final *Page 7 
appealable order pursuant to R.C. 2505.02. Accordingly, because the order appealed and cross-appealed from is not final and appealable, this Court does not have jurisdiction to review it."[3]
 {¶ 26} On August 8, 2002, McIntosh filed the complaint in the case sub judice, Case No. 2002CV02700, alleging Slick had defamed him on March 13, 1995. On April 25, 2003 the trial court granted McIntosh's motion to incorporate all discovery in the Judge Boggins' case. On July 11, 2003, Slick motioned the court for summary judgment. On September 29, 2003, the trial court denied the motion, in part, and reserved ruling, in part. On March 29, 2005, Slick moved the court for summary judgment for a second time. On April 29, 2005, the trial court denied the motion. On November 16, 2005, the trial court denied defendant's motion for summary judgment.
 {¶ 27} The case proceeded to a jury trial, and the jury awarded McIntosh $100,000 in compensatory damages, and $100,000 in punitive damages, plus attorney fees. The trial court journalized the verdict on January 20, 2006 via Judgment Entry. On February 3, 2006, Slick filed a motion for judgment notwithstanding the verdict/motion for a new trial/motion for remittitur.
 {¶ 28} On March 2, 2006, via Judgment Entry, the trial court awarded McIntosh prejudgment interest from March 13, 1995 to January 20, 2006 in the amount of $100,051.00. Also, on March 2, 2006, the trial court denied Slick's motion for statutory *Page 8 
reduction. Slick agreed to pay attorney fees in the amount of $195,000.00, conditioned upon the affirmance of the jury verdict on appeal.
 {¶ 29} On May 9, 2006, via Judgment Entry, Judge Brown denied Slick's motion's for judgment notwithstanding the verdict, for new trial and for remittitur.
 {¶ 30} Slick now appeals, assigning as error:
 {¶ 31} "I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY NOT GRANTING MS. SLICK SUMMARY JUDGMENT, ON THE DEFENSE OF RES JUDICATA, AS MS. SLICK HAD OBTAINED A JUDGMENT ON THE PLEADINGS, WITH RESPECT TO THE DEFAMATION CLAIM, IN THE 1ST CASE, CASE NO. 1995 CV 02208, WHICH WAS NEVER REVERSED.
 {¶ 32} "II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY NOT GRANTING MS. SLICK SUMMARY JUDGMENT ON THE DEFENSE OF STATUTE OF LIMITATIONS, BECAUSE WHEN MR. MCINTOSH REFILED HIS DEFAMATION CLAIM IN THE INSTANT CASE (THE 3RD CASE), THE STATUTE OF LIMITATIONS HAD EXPIRED AND MR. MCINTOSH COULD NOT AGAIN AVAIL HIMSELF OF THE SAVINGS STATUTE.
 {¶ 33} "III. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY NOT GRANTING MS. SLICK SUMMARY JUDGMENT ON THE ISSUES OF LIABILITY AND DAMAGES.
 {¶ 34} "IV. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN ITS PRELIMINARY INSTRUCTIONS TO THE JURY, IN THAT IT INSTRUCTED THE JURY VERBALLY, AND IN WRITING, THAT MR. MCINTOSH WOULD HAVE TO PROVE HIS CASE BY A PREPONDERANCE OF THE EVIDENCE WHEN, AS A MATTER LAW, *Page 9 
MR. MCINTOSH HAD TO PROVE ONE OF THE ELEMENTS OF DEFAMATION (ACTUAL MALICE) BY CLEAR AND CONVINCING EVIDENCE, AND HAD TO PROVE HIS ENTITLEMENT TO PUNITIVE DAMAGES BY CLEAR AND CONVINCING EVIDENCE.
 {¶ 35} "V. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN AN EVIDENTIARY RULING.
 {¶ 36} "VI. THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS TO THE ISSUE OF LIABILITY.
 {¶ 37} "VII. THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS TO THE ISSUE OF COMPENSATORY DAMAGES.
 {¶ 38} "VIII. THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS TO THE ISSUE OF PUNITIVE DAMAGES.
 {¶ 39} "IX. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY NOT REDUCING THE DAMAGES AWARDED BY THE JURY, BY THE AMOUNT OF THE SETTLEMENT PAID TO MR. MCINTOSH BY JOINT TORTFEASORS.
 {¶ 40} "X. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN AWARDING MR. MCINTOSH PREJUDGMENT INTEREST FROM MARCH 13, 1995 TO JANUARY 20, 2006.
 {¶ 41} "XI. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY DENYING DEFENDANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT/MOTION FOR A NEW TRIAL/MOTION FOR REMITTITUR." *Page 10 
 I, II {¶ 42} Appellant's first and second assignments of error raise common and interrelated issues; therefore, we will address the arguments together.
 {¶ 43} Appellant argues the trial court erred in not finding appellee's claims barred by the doctrine of res judicata. We disagree.
 {¶ 44} Via Judgment Entry of December 27, 2001, this Court[4] found Judge Boggins' November 6, 2000 Judgment Entry in Case Nos. 1995CV00475 and 1995CV02208, was not a final appealable order. This Opinion indicated the dismissal of the appeal did not prejudice any future right of appeal of the parties.
 {¶ 45} Appellate Rule 4 provides:
 {¶ 46} "(C) Premature notice of appeal
 {¶ 47} "A notice of appeal filed after the announcement of a decision, order, or sentence but before entry of the judgment or order that begins the running of the appeal time period is treated as filed immediately after the entry."
 {¶ 48} The proceedings before Judge Boggins were final in August of 2004.[5] Pursuant to Appellate Rule 4, the appeal filed in this Court remains pending. Judge Boggins' characterization of the motions as motions for judgment on the pleadings is inaccurate, as the motions were actually motions to dismiss pursuant to Civil Rule 12(B), for failure to state a claim upon which relief can be granted. Accordingly, Judge Boggins' Judgment Entry relative to the motions is not a judgment on the merits.
 {¶ 49} Furthermore, appellant asserts McIntosh's claims were barred by the expiration of the statute of limitations. On appeal from Judge Brown's August 20, 2001 *Page 11 
Judgment Entry this court found the same was not a final appealable order, and dismissed the appeal for want of jurisdiction. Judge Brown's judgment entry remains law of the case and legally enforceable, having not been overturned. As the instant action was timely filed in accordance with his previous judgment entry, McIntosh's claims were not barred by the statute of limitations or res judicata.
 {¶ 50} The first and second assignments of error are overruled.
 III, VI, VII, VIII. {¶ 51} The third, sixth, seventh and eighth assignments of error raise common and interrelated issues; therefore, we will address the arguments together.
 {¶ 52} Slick argues the trial court erred in not granting her judgment on the issues of liability and damages. Slick cites McIntosh's deposition testimony as evidence he did not suffer actual damages, and argues the trial court erred in not granting her summary judgment. Slick further asserts the jury's verdict finding her liable for compensatory and punitive damages was against the manifest weight of the evidence
 {¶ 53} It is axiomatic that judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578, at the syllabus; Gerijo, Inc. v.Fairfield (1994), 70 Ohio St.3d 223, 226, 638 N.E.2d 533. Furthermore, in considering whether a judgment is against the manifest weight of the evidence, it is important that this court be guided by the presumption that the findings of the trier of fact are correct. Seasons Coal Co.,Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 10 OBR 408,461 N.E.2d 1273. If the evidence is susceptible of more than one *Page 12 
interpretation, we must construe the evidence consistently with the trial court's judgment. Gerijo, 70 Ohio St.3d at 226, 638 N.E.2d 533.
 {¶ 54} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172,175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 55} In Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Serv.,Inc., (1992), 81 Ohio App.3d 591, 611 N.E.2d 955, the court described the four elements of defamation as follows:
 {¶ 56} "(a) a false and defamatory statement concerning another;
 {¶ 57} "(b) an unprivileged publication to a third party;
 {¶ 58} "(c) fault amounting at least to negligence on the part of the publisher; and
 {¶ 59} "(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.' 3 Restatement of the Law 2d, Torts (1977) 155, Section 558." *Page 13 
 {¶ 60} See, also, Tohline v. Central Trust Co., N.A. (1988),48 Ohio App.3d 280, 284, 549 N.E.2d 1223, 1228, where the court similarly described the tort of defamation.
 {¶ 61} On April 25, 2003, the trial court granted McIntosh's motion to incorporate all discovery conducted in the original case with Judge Boggins.
 {¶ 62} Upon review, in his memorandum contra Slick's motion for summary judgment, we find McIntosh presented sufficient evidence pursuant to Civil Rule 56, and the trial court properly denied appellant Slick's motion for summary judgment.
 {¶ 63} Further, the record demonstrates the jury did not lose its way in rendering a verdict in favor of McIntosh, and the judgment is supported by competent credible evidence. The testimony at trial established the teachers authorized a "neutral" statement" and did not support a statement for or against McIntosh. Slick's statement as to personally reviewing the evaluation of every high school teacher was contradicted by the testimony of two teachers demonstrating McIntosh criticized them for poor discipline. Further testimony was offered to demonstrate the student support for McIntosh did not interrupt the classroom proceedings in the building, and McIntosh did not make an attempt to garnish support in his favor and did not attempt to exploit the students.
 {¶ 64} Slick maintains McIntosh failed to demonstrate his reputation was harmed by the statements. We disagree. A review of the testimony presented in the record demonstrates harm to McIntosh's reputation in his work with teachers and teachers' unions, and in the community as a whole. Further, the jury in this matter answered special interrogatories in which they determined the statement authored by Slick was false and each passage caused damage to McIntosh's reputation. *Page 14 
 {¶ 65} Finally, Slick argues the jury's award of punitive damages was against the manifest weight of the evidence.
 {¶ 66} The purpose of punitive damages is not to compensate a plaintiff, but to punish and deter certain conduct. Moskovitz v. Mt.Sinai Med. Ctr. (1994), 69 Ohio St.3d 638, 651, 635 N.E.2d 331. The Ohio Supreme Court explained how punitive damages should be looked at as follows:
 {¶ 67} "The focus of the award should be the defendant, and the consideration should be what it will take to bring about the twin aims of punishment and deterrence as to that defendant. We do not require, or invite, financial ruination of a defendant that is liable for punitive damages. While certainly a higher award will always yield a greater punishment and a greater deterrent, the punitive damages award should not go beyond what is necessary to achieve its goals. The law requires an effective punishment, not a draconian one." Dardinger v. Anthem BlueCross Blue Shield, 98 Ohio St.3d 77, 2002-Ohio-7113, 781 N.E.2d 121, at ¶ 178.
 {¶ 68} A jury may award punitive damages only upon a finding of actual malice. Calmes v. Goodyear Tire Rubber Co. (1991), 61 Ohio St.3d 470,473, 575 N.E.2d 416. "Actual malice" has been defined as "`(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. (Emphasis sic.)' "Id., quoting Preston v.Murty (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus. The amount of punitive damages awarded may be excessive when it is determined to have been the product of passion and prejudice. Villella v. WaikemMotors, Inc. (1989), 45 Ohio St.3d 36, 40, 543 N.E.2d 464. *Page 15 
But as long as the punitive damages award is not the result of passion and prejudice and is not the result of a legal error, generally it is not within the province of a reviewing court to substitute its view for that of the jury. Id.
 {¶ 69} Testimony presented at trial established Slick was angry with how the matter concerning McIntosh was proceeding at the time she authored the statement. Additionally, the testimony established Slick told teachers "hell would freeze over before McIntosh returns" and it was "a shame that Mr. McIntosh had all these due process rights." The jury affirmatively answered interrogatories finding Slick prepared the statement with anger, hatred, ill-will, a spirit of revenge, or in reckless disregard, and knew the statements were false. Jury interrogatory No. 6 stated:
 {¶ 70} "Mr. McIntosh proved by clear and convincing evidence, that Ms. Slick prepared/published one or more of the passages with anger, hatred, ill-will, a spirit of revenge, or in reckless disregard of the consequences of the legal rights of Mr. McIntosh."
 {¶ 71} Other interrogatories reflect the jury found Slick "knew" the defamatory statements were false.
 {¶ 72} Based upon the above, we cannot find the punitive damages award was against the manifest weight of the evidence.
 {¶ 73} Upon review of the record, the jury, having viewed the evidence and the credibility of the witnesses, determined McIntosh suffered compensable and punitive damages as a result of Slick's actions. We find there was sufficient, competent credible evidence to support its verdict. Accordingly, we overrule the assignments of error. *Page 16 
 IV {¶ 74} In the fourth assignment of error Appellant argues the trial court erred in instructing the jury McIntosh was required to prove his claim by a preponderance of the evidence. Specifically, Slick argues McIntosh was required to prove Slick knew the statements were false or she entertained serious doubt as to the truth of the statements by clear and convincing evidence.
 {¶ 75} Slick cites the following preliminary instruction given by the trial court prior to the presentation of evidence:
 {¶ 76} "The person who claims that certain facts exist must prove them by a preponderance of the evidence. At the proper time the Court will explain the factual issues. The preponderance of the evidence is the greater weight of the evidence, that is, evidence which you believe because it outweighs or overbalances in your mind the evidence opposed to it. A preponderance means evidence that is more probable, more persuasive or of greater probative value. It is the quality of the evidence that must be weighed. Quality may or may not be identical with quantity."
 {¶ 77} Tr. at 128-129.
 {¶ 78} Following Appellant's objection, the trial court explained:
 {¶ 79} "You also have from me a draft copy of preliminary final instructions and they're numerous times in the interrogatories it talks about which are preponderance of the evidence, which are clear and convincing, and I'm sure that if that changes until those are finalized and if you are not satisfied with the definition of preponderance or clear and convincing, malice, or any other matters that we have been discussing for *Page 17 
quite a while in regard to this, you will tell me. You will have the opportunity to put those objections on the record.
 {¶ 80} "My position is the preliminary instructions are exactly what they say, preliminary instructions. It is not meant to be all inclusive. And the final instructions certainly are going to be submitted to the jury and my ruling in regard to the qualified privilege will certainly set forth which of those are preponderance of the evidence and which of them are clear and convincing. Anything else, Mr. Pergram?
 {¶ 81} "Mr. Pergram: Nothing, thank you, Your Honor."
 {¶ 82} Tr. at 138-139.
 {¶ 83} During her opening statement, Slick's counsel stated:
 {¶ 84} "The Court will instruct you that Mr. McIntosh has to prove by clear and convincing evidence, in other words, you have to be firmly convinced that Ms. Slick knew what she wrote was false or that she was so reckless that she didn't care whether it was false or not. That's what Mr. McIntosh has to prove by clear and convincing evidence. He also has to prove that his reputation has been damaged by what Ms. Slick did."
 {¶ 85} Tr. at 180.
 {¶ 86} Slick concedes the trial court correctly instructed the jury prior to deliberations.
 {¶ 87} Based upon the above, we find Slick has not demonstrated prejudice as a result of the trial court's preliminary instruction. This assignment of error is overruled. *Page 18 
 V, IX {¶ 88} Appellant's fifth and ninth assignments of error raise common and interrelated arguments; therefore, we will address the assignments of error together.
 {¶ 89} Appellant argues the trial court erred in not allowing her to introduce evidence of the monies McIntosh received from his settlement with the Board of Education.
 {¶ 90} Slick maintains the jury awarded McIntosh $100,000 in compensatory damage for harm to his reputation and emotional distress, when he had already received $132,500 from the Board of Education for the same harm to his reputation and emotional distress.
 {¶ 91} At trial, the following exchange occurred:
 {¶ 92} "Q. Now, on direct examination this morning, Mr. McIntosh, your attorney, I believe, asked you if you had settled with the Board of Education and received an apology, also, right?
 {¶ 93} "A. Correct.
 {¶ 94} Q. Okay. And you did in fact receive a monetary settlement from the Board of Education, its members and the superintendent; isn't that correct?
 {¶ 95} "A. From them or from their —
 {¶ 96} "Q. Now, now, hold on.
 {¶ 97} "The Court: Yes. Now, let's — counsel, you want to come forward.
 {¶ 98} "* * *
 {¶ 99} "The Court: You don't want this to come in; you're objecting to this, right?
 {¶ 100} "Mr. Zimmerman: Yeah. *Page 19 
 {¶ 101} "The Court: And I've already said that I'm going to allow it to come in. Um, — let me see this.
 {¶ 102} "Mr. Pergram: I can ask —
 {¶ 103} "The Court: We got all this stuff. So, I mean, it's not going to come in itself.
 {¶ 104} "Mr. Pergram: I'm not going to introduce the document.
 {¶ 105} "The Court: Okay.
 {¶ 106} "Mr. Pergram: But I could ask, isn't it true that the board members and the superintendent signed a settlement and release agreement and pursuant to that you received the money?
 {¶ 107} "* * *
 {¶ 108} "Mr. Pergram: — since we're outside the presence of the jury.
 {¶ 109} "My follow-up question to that is going to be, ah, And isn't it true that the moneys you received are for emotional distress and loss of reputation? Period.
 {¶ 110} "The Court: Don't we already have in here what the document is that was signed?
 {¶ 111} "There was already testimony in here of the document that was signed, ah — let me find it here.
 {¶ 112} "Exhibit Number 40. Don't we already have —
 {¶ 113} "Mr. Pergram: I think that's a letter of apology.
 {¶ 114} "The Court: Yeah. Don't we already have that in here?
 {¶ 115} "Mr. Pergram: No.
 {¶ 116} "The Court: We've had testimony about it, haven't we? *Page 20 
 {¶ 117} "Mr. Zimmerman: Yes, Your Honor, Mr. McIntosh identified it.
 {¶ 118} "Mr. Pergram: Well, that's a letter of apology, Judge.
 {¶ 119} "The Court: Yeah.
 {¶ 120} "It dealt with what was the subject matter of the suit with the school board and the school board members.
 {¶ 121} "So, I'm not letting anything else in.
 {¶ 122} "Mr. Pergram: Well, they —
 {¶ 123} "The Court: And I'll note your objection for the record.
 {¶ 124} "Mr. Pergram: But they sued for more than just reputation.
 {¶ 125} "The Court: I'll note your objection for the record.
 {¶ 126} "The apology speaks for itself.
 {¶ 127} "I'm noting your objection for the record.
 {¶ 128} "You can put the amount of money in, no mention of insurance and that's it.
 {¶ 129} "Mr. Zimmerman: Thank you, Your Honor.
 {¶ 130} "Mr. Pergram: Your Honor, and I think Mr. Zimmerman needs to be instructed on closing argument he's not to argue to this jury that that $132,500 was for something else other than what it was for, or he could tell the ladies and gentlemen of the jury that was. In other words, he could tell the jury, ladies and gentlemen, that was for his back pay loss, not his reputation.
 {¶ 131} "The Court: Ladies and gentlemen I'm telling you that apology speaks for itself. That's it."
 {¶ 132} Tr. at 314-322. *Page 21 
 {¶ 133} Upon review of the record and the evidence introduced at trial, we find the trial court did not abuse its discretion in these evidentiary rulings. Slick has not demonstrated prejudice as a result of the trial court's ruling. The trial court allowed the amount of the settlement to be introduced, along with the letter of apology from the school board to McIntosh concerning the incident.
 {¶ 134} Slick further asserts the trial court erred in not reducing the jury verdict by the amount of the settlement, as the settlement was paid by joint tortfeasors.
 {¶ 135} Former R.C. 2307.32(F), now 2307.33(F) in effect at the time of trial, provided:
 {¶ 136} "When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable intort for the same injury or loss to person * * *, the following apply:
 {¶ 137} "(1) The release or covenant does not discharge any of the other tortfeasors from liability for the injury * * * unless its terms otherwise provide, but it reduces the claim against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater;
 {¶ 138} "(2) The release or covenant discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor." (Emphasis added.) 142 Ohio Laws, Part I, 1673.
 {¶ 139} Slick cites the Ohio Supreme Court opinion in Fidelholtz v.Peller (1988), 81 Ohio St.3d 197. In Fidelholtz, the Court held: *Page 22 
 {¶ 140} "We agree with appellees that two policy objectives for these statutes were to encourage settlement and to prevent double recovery. However, we believe that the broader and more important goal was to ensure that where multiple tortfeasors were at fault in bringing about the injury to the innocent party, each tortfeasor would share the burden of making the injured party whole again. It seems only logical that a party found to have acted alone in causing the harm should not be entitled to a reduction in the damage award.
 {¶ 141} "Accordingly, we hold that former R.C. 2307.32(F) (now R.C.2307.33[F]) entitles a defendant to set off from a judgment funds received by a plaintiff pursuant to a settlement agreement with a co-defendant where there is a determination that the settling co-defendant is a person "liable in tort." A person is "liable in tort" when he or she acted tortiously and thereby caused harm. The determination may be a jury finding, a judicial adjudication, stipulations of the parties, or the release language itself. To the extent that Ziegler is inconsistent with the rule of law announced today, it is overruled.
 {¶ 142} "* * *
 {¶ 143} "We hold that payments made to appellants by defendants who were not determined to be persons "liable in tort" do not entitle appellees to a setoff."
 {¶ 144} Slick cites the following exchange at the January 17, 2006 hearing:
 {¶ 145} "MR. ZIMMERMAN: Yes, Your Honor. The finding of fact, I believe, ah, at issue is whether the school board's statements regarding Mr. McIntosh, false statements made by the school board, damaged Mr. McIntosh's reputation. *Page 23 
 {¶ 146} "And I believe the evidence has demonstrated that in conjunction with the school board's false statements and Miss Slick's statements, Mr. McIntosh's reputation has been damaged.
 {¶ 147} "So for purposes of the trial, I will concede that that is a finding [sic] could be made by the Court.
 {¶ 148} "However, I would reserve all my other arguments as it relates to whether setoff is appropriate in this case.
 {¶ 149} "THE COURT: As a matter of law, is that correct?
 {¶ 150} "MR. ZIMMERMAN: Yes, yes, sir.
 {¶ 151} "THE COURT: And is that, ah, reflective of what you all understood, ah, the agreement was on this issue, Mr. Pergram?
 {¶ 152} "MR. PERGRAM: Ah, pretty close, Judge.
 {¶ 153} "I would not, certainly, stipulate or acknowledge that Mrs. Slick was a tortfeasor. She at this point is an alleged tortfeasor.
 {¶ 154} "Ah, see if I can put this into words that will be acceptable to Mr. Zimmerman.
 {¶ 155} "THE COURT: Well, I think the idea is that if the jury makes a finding, that, ah, Miss Slick did — and as it's set out in the jury instructions and as it's set out on the verdict forms, if they answer, if, if they make an award of compensatory, if they make the finding that, what answers, 1E, 2E, 3E of the proposed jury instructions, yes, then, as a matter of fact, everyone is in agreement that Mr. McIntosh was damaged by both the Board of Education and the statements by Miss Slick, if the jury answers yes to 1E, *Page 24 
2E, and/or 3E, but it's left as a matter of law as to whether that entitles Miss Slick to a setoff.
 {¶ 156} "MR. PERGRAM: All right. As I understood it during our conversation, Your Honor, Mr. Zimmerman wanted to reserve the right to argue and has not conceded that as a matter of law, ah, the settling tortfeasor and the tortfeasor seeking the setoff, ah, I think is Mr. Zimmerman's argument that they have to all be defendants in the same case before the statutory setoff is allowed. We understand he is preserving the right to make that argument, but that he has admitted to all of the facts necessary for the statutory setoff, as argued in our motion for partial summary judgment.
 {¶ 157} "And, ah, I believe that we have filed with the Court, ah, under seal, the actual settlement and release agreement which reflects the amount that the Board of Education, its members and the superintendents paid to Mr. McIntosh through a settlement.
 {¶ 158} "I think we should indicate for the record what that amount is and that is $132,500.
 {¶ 159} "It's my understanding that if Miss Slick is found liable for defamation and damages are awarded against her, that she would automatically be entitled to the $132,500 as a setoff, subject to Mr. Zimmerman's argument that all of the, ah, tortfeasors must be from the same case before that setoff would be allowed.
 {¶ 160} "I know that's a lot. But I'm hoping that's agreeable to Mr. Zimmerman and can stipulate to those facts.
 {¶ 161} "THE COURT: Well, let's ask Mr. Zimmerman if he can. *Page 25 
 {¶ 162} "MR. ZIMMERMAN: Your Honor, I think that you said it best. And I'm certainly not limiting my legal arguments to the ones that Mr. Pergram is choosing, so, I think the Court and the record is clear as to what I'm agreeing on.
 {¶ 163} "Thank you.
 {¶ 164} "THE COURT: And I — Mr. Zimmerman, Mr. Pergram, would you agree that the only difference between you and Mr. Zimmerman at this point is whether Mr. Zimmerman is limited to the, ah-defendants in the same suit issue?
 {¶ 165} "MR. PERGRAM: That's my understanding, Your Honor.
 {¶ 166} "THE COURT: Well, I'm going to accept that everyone is agreeing to the facts as I stated them and that Mr. Zimmerman still has any arguments at law which he wants to advance in regard to those facts.
 {¶ 167} "And do you want to have an objection noted, Mr. Pergram?
 {¶ 168} "MR. PERGRAM: Yes, we would disagree with that legal principle, that Mr. Zimmerman is advancing.
 {¶ 169} "THE COURT: Great.
 {¶ 170} "MR. PERGRAM: But, it looks like we are in agreement with respect to the facts, the dollar amount, and if there is a judgment against Miss Slick, that the amount that would be setoff would be 132,500.
 {¶ 171} "THE COURT: If the Court finds that the facts as agreed upon, ah, warrant that.
 {¶ 172} "MR. ZIMMERMAN: Thank you.
 {¶ 173} "THE COURT: Very well.
 {¶ 174} "Anything else we want to put on the record, gentlemen? *Page 26 
 {¶ 175} "MR. PERGRAM: Judge, I'm not sure what your last comment meant.
 {¶ 176} "THE COURT: What I'm saying is Mr. Zimmerman is not limited to arguing that, the setoff only comes if the defendants, the board and Miss Slick, are in the same suit. Defendants in the same suit. I'm not limiting him to just being able to argue one issue.
 {¶ 177} "MR. PERGRAM: Well, do we still have factual issues in dispute, Your Honor?
 {¶ 178} "THE COURT: No, we don't have any factual issues in dispute.
 {¶ 179} "MR. PERGRAM: Okay. All right.
 {¶ 180} THE COURT: The facts are set, everyone is agreeing to the facts.
 {¶ 181} "MR. ZIMMERMAN: And if I may, Your Honor, I'm certainly not stipulating that a setoff should occur based upon my agreement regarding the facts.
 {¶ 182} "Thank you.
 {¶ 183} "THE COURT: As I understand it, the facts are set and then everyone is going to argue the law as it applies to those facts.
 {¶ 184} "MR. ZIMMERMAN: Thank you.
 {¶ 185} "THE COURT: That acceptable to you, Mr. Pergram?
 {¶ 186} "MR. PERGRAM: I think it is, Your Honor, as long as — you say the facts are set. Those facts are set are those which would entitle Miss Slick to the statutory setoff, if the law also favors her.
 {¶ 187} "The Court: If the law favors her, yes.
 {¶ 188} "Mr. Pergram: Yes.
 {¶ 189} "The Court: All right. *Page 27 
 {¶ 190} "Do you agree that, Mr. Zimmerman?
 {¶ 191} "Mr. Zimmerman: I guess that's another way of saying it, Yes, Your Honor.
 {¶ 192} "The Court: Yeah. Right. If the law favors her. She's not entitled to it if the law does not favor her."
 {¶ 193} Tr. 4-11.[6]
 {¶ 194} Upon review of the record, evidence was introduced at trial concerning the lawsuit between McIntosh and the School Board concerning his termination and statements made causing damage to his reputation. The evidence established a settlement of the lawsuit for $132,500 and a written apology from the School Board to McIntosh.
 {¶ 195} Based upon the above, the jury was aware of the settlement agreement, the prior proceedings between McIntosh and the Board and the letter of apology, in rendering their verdict. The evidence presented demonstrates the statements made by the Board were separate and distinct from the defamatory statements at issue in this case, despite similar damage caused by the acts. While the cause of actions against both tortfeasors were the same, the torts committed were committed separately, not jointly. Each tort occasioned its own separate claim for damages. Accordingly, the trial court did not err in deciding not to set off the award of compensatory damages.
 {¶ 196} Slick's fifth and ninth assignments of error are overruled.
 X. {¶ 197} In the tenth assignment of error, Slick asserts the trial court erred in awarding McIntosh prejudgment interest from March 13, 1995 to January 20, 2006. *Page 28 
Slick argues McIntosh did not prove he made a good faith effort to settle the case, nor did he prove Slick did not make a good faith effort to settle. Slick further asserts the award of prejudgment interest should only run from the date of the filing of the within case.
 {¶ 198} The decision whether to grant or deny prejudgment interest rests within the discretion of the trial court, and will not be disturbed absent an abuse of discretion. Wagner v. Midwestern Indemn.Co. (1998), 83 Ohio St.3d 287.
 {¶ 199} R.C. Section 1343.03(C)(1) provides:
 {¶ 200} "If, upon motion of any party to a civil action that is based on tortious conduct, that has not been settled by agreement of the parties, and in which the court has rendered a judgment, decree, or order for the payment of money, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case, interest on the judgment, decree, or order shall be computed as follows:
 {¶ 201} "(a) In an action in which the party required to pay the money has admitted liability in a pleading, from the date the cause of action accrued to the date on which the order, judgment, or decree was rendered;
 {¶ 202} "(b) In an action in which the party required to pay the money engaged in the conduct resulting in liability with the deliberate purpose of causing harm to the party to whom the money is to be paid, from the date the cause of action accrued to the date on which the order, judgment, or decree was rendered;
 {¶ 203} "(c) In all other actions, for the longer of the following periods: *Page 29 
 {¶ 204} "(i) From the date on which the party to whom the money is to be paid gave the first notice described in division (C)(1)(c)(i) of this section to the date on which the judgment, order, or decree was rendered. The period described in division (C)(1)(c)(i) of this section shall apply only if the party to whom the money is to be paid made a reasonable attempt to determine if the party required to pay had insurance coverage for liability for the tortious conduct and gave to the party required to pay and to any identified insurer, as nearly simultaneously as practicable, written notice in person or by certified mail that the cause of action had accrued.
 {¶ 205} "(ii) From the date on which the party to whom the money is to be paid filed the pleading on which the judgment, decree, or order was based to the date on which the judgment, decree, or order was rendered."
 {¶ 206} In Kalain v. Smith (1986), 25 Ohio St.3d 157, the Ohio Supreme Court held:
 {¶ 207} "A party has not "failed to make a good faith effort to settle" under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer."
 {¶ 208} The trial court conducted a hearing on the motion on March 27, 2006. At the hearing, testimony established McIntosh had made settlement demands since the time he first filed a lawsuit. Furthermore, he made a written settlement demand on *Page 30 
December 30, 2005, followed by a fax on January 5, 2006. The January 5, 2006 fax demanded a monetary sum and a letter of apology. Slick offered $1000 in return, and refused to author the letter of apology. Slick did not make further settlement offers.
 {¶ 209} Again, the jury affirmatively answered Jury Interrogatory No. 6, stating:
 {¶ 210} "Mr. McIntosh proved by clear and convincing evidence, that Ms. Slick prepared/published one or more of the passages with anger, hatred, ill-will, a spirit of revenge, or in reckless disregard of the consequences of the legal rights of Mr. McIntosh."
 {¶ 211} Other interrogatories found Slick "knew" the defamatory statements were false.
 {¶ 212} Accordingly, we find the trial court did not abuse its discretion in awarding prejudgment interest for the time specified.
 {¶ 213} Slick's tenth assignment of error is overruled.
 XI. {¶ 214} In the final assignment of error, Slick maintains the trial court erred in denying her motion for judgment notwithstanding the verdict/motion for new trial.
 {¶ 215} For the reasons set forth in our analysis and disposition of the assignments of error set forth above, we overrule appellant's eleventh assignment of error. *Page 31 
 {¶ 216} The judgment of the Stark County Court of Common Pleas is affirmed.
 By: Hoffman, P.J. Wise, J. and Delaney, J. concur *Page 32 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] Members of the Ninth District Court of Appeals sitting by assignment for this Court.
[2] Again, members of the Ninth District sitting by assignment for this Court.
[3] As to the issue whether a dismissal without prejudice by a trial court constitutes a final appealable order, we disagree with our brethren from the Ninth District who decided this issue when sitting by assignment for this Court. Their decision is nevertheless still law of the case as it pertains to this appeal.
[4] Again, members of the Ninth District sitting by assignment for this Court.
[5] See, August 16, 2004 Docket Entry in Case No. 1995CV00475.
[6] We find this lengthy colloquy confusing as to what exactly was being agreed upon or reserved for objection. *Page 1